Fred Wesley McCLENDON, Appellant,

v.

The STATE of Texas, Appellee.

No. 63566.

Court of Criminal Appeals of Texas,
Panel No. 2.

Oct. 20, 1982.

Charles W. Tessmer and Bentley C. Kelly, III, on appeal only, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Gregory S. Long and Michael P. Patterson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and CLINTON and TEAGUE, JJ.

OPINION

CLINTON, Judge.

Appeal is taken from a conviction for attempt in which the punishment was assessed at eighteen years confinement.

The sufficiency of the evidence is challenged.

The indictment on which appellant's conviction is predicated alleged in pertinent part, that he:

"did unlawfully, then and there with the specific intent to commit the offense of aggravated rape, attempt to have sexual intercourse with B___ A___ M___,[1] hereinafter called complainant, a female not his wife, without the consent of the said complainant and did then and there attempt to compel the complainant to submit to such act of sexual intercourse *by*

1. To protect complainant's anonymity we will    call her "Bea."

*knowingly and intentionally threatening the imminent infliction of serious bodily injury on the complainant;* said attempt amounting to more than mere preparation that tended but failed to effect the commission of the offense intended." [2]

He now contends the evidence is insufficient to prove, in the absence of a verbal threat or exhibition of a deadly weapon *per se,* that it was by threatening the imminent infliction of serious bodily injury, that he attempted to have sexual intercourse with the complainant without her consent. This contention is without merit.

Viewed in a light most favorable to the trial court's finding of "guilty," the evidence established the complainant was involved in a minor one car collision at approximately 4:30 a.m., on October 29, 1978. A man, identified as appellant, and a woman came separately to her aid; the woman said she did not have a telephone. Appellant kept insisting she could come with him to his house to use the phone. Bea resisted this idea, asking the woman if any of her neighbors had telephones. Appellant interjected that his roommate was home and assured Bea she would be safe. The woman encouraged Bea to go with appellant, remarking that she needed a telephone and he seemed to be a "good guy." Finally, Bea agreed to follow appellant to his house.

The front fender of Bea's car was bent and was rubbing noisily against a tire, so she agreed to get in the car with appellant. Arriving at the house, appellant went into his room to try the phone; he told Bea someone was on it. He told her to come listen, so she stepped just inside the bedroom so she could put the receiver to her ear, and she could hear someone talking. Appellant hung up the phone. When he stood up, he grabbed Bea and threw her on the bed, saying, "I'm going to do it to you."

Struggling, Bea started pleading with appellant, who told her he would not hurt her if she would just be still. But she would not be still. Appellant stood up and said, "I told you not to move, I wouldn't hurt you," and hit her with his fist, once in the eye, and again "upside the head," knocking her back on the bed each time.

Saying "I'm going to get me some of that white stuff," appellant began pulling Bea's pants off; she started kicking. This time appellant hit her in the eye with a hard, heavy black object. Bea testified the object looked like State's Exhibit No. 1, a weapon commonly known as a "slap stick." [3] At this point Bea began to bleed "bad, very bad;" blood was all in her eyes and she was stunned. When she "regained [her] senses," she saw appellant was nude from the waist down. She pushed him with her feet.

He hit her again about her head and eyes with the slap stick, and grabbed her arm, telling her to take off her blouse; she refused. He said, "You will take it off," hit her again and ripped off her blouse, then her bra. After all Bea's clothes were off appellant pulled her off the bed and, hitting her again, dragged her onto the floor. According to Bea:

> "He grabbed me by the throat and I thought he was going to kill me and I told him he would have to kill me and he said, 'I am going to have me some of that white stuff.'"

She told him again "he'd have to kill [her] first." Bea believed appellant was going to kill her, and she started saying her prayers.

At this point, another man walked into the room and told appellant to "get her out" of there. Appellant stood up and the two men began arguing. Bea started to get up, but appellant hit her three more times in the head with the slap stick, telling her to get dressed. He hit her twice more

---

**2.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**3.** Upon the request of this Court, State's Exhibit No. 1 was transmitted to us by the district clerk. Made of black leather, the weapon apparently contains lead in the "club" portion. It is approximately eleven inches long, flattened has a handle strap and, as one witness accurately described the part which would be visible when the weapon is held, it is the approximate size and shape of a "Coke bottle." Appellant, as well as a police officer witness, referred to it as a "black jack."

because she was not getting dressed fast enough and the other man finally grabbed him to prevent his hitting her again, saying, "I told you she's had enough, leave her alone." Appellant dragged Bea out the front door and into the yard, still hitting her. The other man had come out on the front porch and called to appellant, "I told you to stop."

Appellant let Bea fall, and she "played dead." He walked off, then came back and pushed her with his foot. Then he walked to his car. Bea testified she could hear him "just fooling around" in his car, not starting it.

In the interim, Larry Houston had heard someone screaming for help at about 5:00 a.m. From an upstairs window in a neighboring house, Houston could see a man holding a dark object in his hand, chasing a woman. When the man caught the woman, he hit her in the back of the head with the object which was about the size of a Coke bottle. She fell. Standing over her, the man kept telling her to get up. The man then got in a car. Houston at this point called the police.

By the time the police arrived, appellant had started his car and was backing out the driveway. According to an arresting officer, Bea was badly bruised, both her eyes were black and swollen and her hair was caked with blood. There was blood all over her face, neck and other parts of her body. Appellant, who was clothed only in a pair of pants, was arrested and a search of his car produced the slap stick, States' Exhibit No. 1.

Bea testified that before appellant's housemate entered the room she believed appellant was going to kill her because she was "losing so much blood and getting weak, and he did not seem like he was going to stop." Several color photographs taken of appellant's room after the assault reveal the carpet, bed, walls, telephone and some of Bea's clothing to have been blood soaked and spattered.

Appellant argues that because he neither verbally threatened Bea with death nor displayed a deadly weapon *per se*, the evidence is insufficient to prove he attempted to compel Bea's submission by threatening the imminent infliction of serious bodily injury.

It has long been the law of this State that a threat can be communicated by action or conduct as well as verbally. *Berry v. State,* 579 S.W.2d 487 (Tex.Cr.App. 1979); *Church v. State,* 552 S.W.2d 138 (Tex.Cr.App.1977); *Most v. State,* 386 S.W.2d 537 (Tex.Cr.App.1965). Neither has this Court required proof that a deadly weapon, *per se,* was used or exhibited for a determination that evidence is sufficient to establish a threat of death or serious bodily injury has been made. E.g., *Berry,* supra, *Church,* supra.

In *Berry,* supra, at 489, it was held:

"In the instant case, appellant grabbed the [complainant] hard, hurting her arm and wrist. He then stuck a sharp, flat object in the back of her neck; she testified that the object felt like a knife, forcibly pressed against her neck. Appellant repeatedly told her that if she cooperated with his demands she would not be hurt; the implication of this threat, of course, is that she *would* be hurt or harmed if she resisted. By his actions and words, appellant indicated to the [complainant] that he had a weapon and that he would use it if she resisted. These acts, coupled with his threats, are sufficient evidence of a threat of serious bodily injury." [Emphasis original]

The essential difference between the facts in *Berry,* supra, and those constituting the instant offense, is that the victim here *did* resist appellant in spite of his threat that she would be hurt if she did, and then made his threat good by repeatedly using his weapon.

And though we cannot say the weapon he used was a deadly one *per se,* clearly, through the manner of its use, and considering its size and shape, it was fully capable of producing death or serious bodily injury. V.T.C.A. Penal Code, § 1.07(a)(11)(B); See also *Denham v. State,* 574 S.W.2d 129 (Tex.Cr.App.1978); *Parkman v. State,* 149 Tex.Cr.R. 101, 191 S.W.2d 743 (1978). Indeed, appellant himself testified to as much in the following exchange on redirect examination:

"Q: Is it very heavy?

A: Pretty much, yes.

\* \* \* \* \* \*

Q: Do you think if you hit somebody with that, you would do a great deal of damage?

A: Yes.

Q: If you hit somebody with that, do you think it would have hurt them more than just with your hand?

A: It probably would have fractured them."

Compare *Limuel v. State,* 568 S.W.2d 309 (Tex.Cr.App.1978).

■ We hold the evidence is sufficient to support the trial judge's finding that appellant committed the offense of attempt by threatening the imminent infliction of serious bodily injury on Bea.

This ground of error is overruled.

■ Appellant's second ground of error alleges the trial court erred in failing to insure the court reporter made a statement of facts of the final arguments on punishment.

We first note appellant does not contend that he was deprived of an opportunity to make argument to the trial court on the issue of punishment; indeed, the transcription of the court reporter's notes indicates otherwise. Neither does appellant cite a case in which a new punishment hearing has been ordered due to prosecutorial error committed in the argument made to the trial judge, sitting without a jury,[4] and we venture to say that there is none.

In the event appellant lodged a timely specific objection to any improper argument by the prosecutor which was adequate to preserve the question for review by this Court, we are satisfied the trial court disregarded the argument.

Under the circumstances presented, we hold no reversible error is shown; this ground of error is overruled.

The judgment of conviction is affirmed.

**4.** In fact, appellant's "Motion for the Court to Direct Court Reporter" contains only the following request regarding final arguments:

"... and all final arguments made *to the jury* by counsel for the defense and the State in the above styled and numbered cause."