

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00406-CR
## NO. 02-13-00407-CR

CHARLES EDWARD PAIR, JR.                                    APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

### FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
### TRIAL COURT NO. 09398, 10031

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Charles Edward Pair, Jr. appeals his two convictions for aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B) (West Supp. 2014). A jury found Pair guilty, and the trial court sentenced him to life imprisonment and a $10,000 fine in each case, ordering

---

[1]*See* Tex. R. App. P. 47.4.

that the sentences run concurrently. In two issues, Pair argues that the trial court abused its discretion by admitting the victim's outcry statement and that, in trial court cause number 09398 (our cause number 02-13-00406-CR), the issue was never joined between him and the State due to a failure to amend the indictment. We will affirm.

## II. FACTUAL BACKGROUND

In 2009, eleven year-old Sally[2] was living with her mother Kassandra, step-father Pair, and fifteen-year-old sister Julie in a mobile home in Young County, Texas. One Sunday, Kassandra left Sally, Julie, and Pair at home while she went to the hospital with her oldest daughter Tara and Tara's children. Kassandra left about 10:00 that morning and returned around 11:30 that night.

At approximately 8:00 in the evening, Pair told Julie's boyfriend, who was visiting, to leave the home. Pair then suggested and engaged in a drinking game with Sally and Julie that required the loser to take shots of Everclear and tequila. Sally and Julie soon became drunk, and when Kassandra called to say that she was on her way home, Pair told Julie to dispose of the liquor bottles outside in a boat stored in the back of Pair's truck.

Although Sally attempted to follow after Julie, Pair demanded that she stay inside, where he then forcibly penetrated her vagina and anus with his penis.

[2]To protect the anonymity of the children in this case, we will use aliases to refer to all individuals named herein with the exception of the appellant. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

2

Sally eventually pulled herself away and ran outside to join her sister. Pair joined the sisters and began smoking cigarettes, allowing them to do the same. Sally made a comment about it being "balls cold" outside, and Pair replied, "No, this is what balls look like," and exposed himself to his minor stepdaughters.

Back inside, Pair convinced Sally to play "strip poker." Sally testified that her last memory of the night is running towards her mother's room while her pants were on the floor in order to get away from Pair. Julie testified that she observed Sally and Pair playing strip poker and later saw Sally running into Kassandra's room in only her shirt and underwear.

Sally went to school the next morning—still feeling nauseated and intoxicated—without telling her mother what had happened. While there, Sally told some close friends about what Pair had done, and they convinced Sally to tell Kassandra. After school, Sally told Kassandra that Pair had raped her vaginally and anally. Kassandra called Tara, who called the police. The police found Everclear and tequila bottles in a boat in the bed of Pair's truck. Kassandra gave the police a written statement detailing what Sally had told her.

### III. RELIABILITY OF THE OUTCRY STATEMENT

In his first issue, Pair contends that the trial court abused its discretion by admitting the outcry statement made by Sally to Kassandra because it did not possess sufficient indicia of reliability at the time of the trial court's ruling.

**A. Law on Admissibility of Outcry Statement and Standard of Review**

3

Hearsay is generally inadmissible. Tex. R. Evid. 802. But article 38.072 provides that an outcry statement is not inadmissible on the basis that it is hearsay if, in relevant part, (1) the statement describes a sexual assault offense that a defendant committed against a child younger than fourteen years of age; (2) the statement was made by the child to the first person who was eighteen years old or older, other than the defendant, that the child spoke to about the offense; and (3) the "trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." Tex. Code Crim. Proc. Ann. art. 38.072, §§ 1(1), 2 (West Supp. 2014); *see Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011); *West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd). Outcry testimony admitted in compliance with article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony. *Duran v. State*, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.)

Various courts have created a non-exclusive list of factors that tend to indicate reliability of an outcry statement. *See Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd); *Buckley v. State*, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana 1988), *aff'd*, 786 S.W.2d 357 (Tex. Crim. App. 1990). This non-exclusive list includes: (1) whether the child victim testified at trial and admitted making the out-of-court statement; (2) whether the child understood the need to tell the truth and had the ability to observe, recollect, and narrate; (3)

4

whether other evidence corroborated the statement; (4) whether the child made the statement spontaneously in her own terminology or whether evidence existed of prior prompting or manipulation by adults; (5) whether the child's statement was clear and unambiguous and rose to the needed level of certainty; (6) whether the statement was consistent with other evidence; (7) whether the statement described an event that a child of the victim's age could not be expected to fabricate; (8) whether the child behaved abnormally after the contact; (9) whether the child had a motive to fabricate the statement; (10) whether the child expected punishment by reporting the conduct; and (11) whether the accused had the opportunity to commit the offense. *Norris*, 788 S.W.2d at 71 (citing *Buckley*, 758 S.W.2d at 343–44); *Woodruff v. State*, Nos. 02-11-00337-CR, 02-11-00338-CR, 02-11-00339-CR, 02-11-00340-CR, 02-11-00341-CR, 02-11-00342-CR, 02-11-00343-CR, 2012 WL 3041114, at *9 (Tex. App.—Fort Worth July 26, 2012, pet. ref'd) (mem. op., not designated for publication).

A trial court's decision that the outcry statement is reliable and admissible under article 38.072 will not be disturbed absent a clear abuse of discretion. *Duran*, 163 S.W.3d at 257; *see Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court abuses its discretion by admitting a statement under article 38.072 only when the court's decision falls outside of the zone of reasonable disagreement. *Bautista v. State*, 189 S.W.3d 365, 367 (Tex. App.—Fort Worth 2006, pet. ref'd).

5

## B. Reliability of Sally's Statement[3]

Kassandra was the State's sole witness at the article 38.072 hearing. She testified that Sally got home from school at 4:30 p.m. on January 26, 2009, came inside the house, and asked Kassandra how she had felt when Tara had confided in her that she had been raped in the past. Kassandra said that she had been very angry because she could not help Tara after so much time had passed. Sally then told Kassandra that Pair had raped her the night before. Sally explained to Kassandra that she, Pair, and Julie had been playing a drinking game while playing Guitar Hero and that she had become drunk. Sally told Kassandra that Pair sent Julie outside to hide the liquor bottles but would not let Sally go outside with her sister. Sally explained that Pair "grabbed" her when she headed for the door, pulled down her underwear, and penetrated her. Sally pulled away, she flipped over, and then he penetrated her anally. Sally told her mother that she did not remember getting in bed, that Pair's cigarettes "were strung all over her bedroom," and that she did not know how they got there. Sally explained that she had not wanted to tell Kassandra because she did not want to hurt her but that, after talking to her friends at school, she decided to tell

---

[3]Contrary to the State's assertion on appeal, the record clearly indicates that Pair objected to the outcry statement's reliability and received an adverse ruling at the article 38.072 hearing conducted outside the presence of the jury. Although Pair did not object during Kassandra's testimony before the jury, his 38.072 objection at the pretrial hearing was sufficient to preserve his complaint for appeal. *See* Tex. R. Evid. 103(a)(1); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

6

her mother what had happened. Kassandra testified that she accompanied Sally to the hospital that day and that Sally "was very quiet, very sullen," and kept asking her mother if she was alright.

Kassandra testified that she gave a written statement to police detailing what Sally had told her. The State introduced the written statement into evidence at the hearing.[4] The written statement was similar to Kassandra's trial testimony, with minor variations. She used the terms "vagina" and "anus" in her written statement. When asked at the hearing if she had used "the kind of vocabulary" that Sally used when making the written statement, Kassandra answered, "Most of it. I don't – I was kind of in shock, so I really couldn't say the exact words she said." Kassandra remembered Sally saying that Pair had "stuck it in [her] vaginally" and also asking "if it was rape if it was stuck in anally." When Kassandra told Sally that it was rape, Sally said, "He stuck it in me vaginally. I tried to crawl away and he stuck it in me anally."

On cross-examination, Kassandra testified that her written statement was "pretty close" to the exact language used by Sally. Kassandra maintained that Sally had used the words "vaginally" and "anally" because she had been taught the proper terms.

Pair contends that, applying the non-exclusive list of factors set out in *Buckley* and *Norris*, the trial court did not have sufficient indicia of reliability of the

---

[4]The written statement was not introduced into evidence at trial.

outcry statement *at the time that it ruled* that the statement was admissible. *See Norris*, 788 S.W.2d at 71; *Buckley*, 758 S.W.2d at 343–44. For example, Pair argues that the trial court did not know—at the time of its ruling—whether Sally would testify at trial, whether Sally would admit to making the outcry statement, whether Sally understood the need to tell the truth, or whether other evidence corroborated Sally's statement or was consistent with Sally's statement.

The indicia of reliability set out in those cases provide guidance, when applicable, to the trial court at an article 38.072 hearing in determining its only task—whether, based on the time, content, and circumstances of the statement, the outcry is reliable. *See Sanchez*, 354 S.W.3d at 488; *Norris*, 788 S.W.2d at 71; *Buckley,* 758 S.W.2d at 343–44; *see also Broderick v. State*, 89 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (explaining that the indicia of reliability enumerated in *Norris* and similar cases should not be expanded into a requirement that the court examine the circumstances of the alleged abuse). But the ultimate inquiry is whether the time of the child's statement, the content of the child's statement, and the circumstances surrounding that statement provide sufficient indicia of reliability. *See Sanchez*, 354 S.W.3d at 488.

Here, Kassandra testified that Sally made her outcry the day after the incident, just after returning home from school. Sally gave specific details of the night's events, as detailed above, and of the following day's events, leading up to her confiding in her mother about what had happened. Kassandra also testified that when the police showed up that day, they "got the liquor bottles," confirming

8

that liquor bottles were found on the property and corroborating Sally's statement that Pair had Julie hide the liquor bottles.

Pair asserts that inconsistencies between Kassandra's testimony of the outcry statement and her written statement detailing the outcry statement cast doubt on the statement's reliability, but an article 38.072 hearing is solely to determine the reliability of the outcry statement, not the reliability of the outcry witness. *See id.* (explaining that the credibility of the outcry witness is not a relevant issue at an article 38.072 hearing).

Although the trial court could not determine if Sally would indeed testify, and the State did not expand on the supporting evidence during the hearing, viewing the time of Sally's statement to Kassandra, the content of that statement, and the circumstances surrounding that statement, we hold that the trial court acted within its discretion by admitting the outcry statement. *See Sanchez*, 354 S.W.3d at 488; *Garcia*, 792 S.W.2d at 92. We overrule Pair's first issue.

## IV. JOINDER OF THE INDICTMENT

In his second issue, Pair argues that proper joinder of the issue between himself and the State never occurred in trial court cause number 09398 (our cause number 02-13-00406-CR). Pair argues that he pleaded "not guilty" to a proposed amended indictment, which substituted the word "vagina" for "sexual organ," but that the indictment was never amended.

The original indictment charged Pair with aggravated sexual assault of a child by "intentionally or knowingly causi[ing] the penetration of the <u>sexual organ</u>

9

of Sally[]."  Prior to trial, the State filed a motion to amend the indictment to change the term "sexual organ" to "vagina" so that the indictment would allege that Pair "intentionally or knowingly caused the penetration of the [vagina] of Sally[]."  The trial court entered an order finding that the motion was "well-taken" and that there was no opposition to the motion.  However, the indictment was never amended.

At trial, when the prosecutor read the indictment in front of the jury, she read the unamended indictment—alleging penetration of the sexual organ—and Pair entered a plea of not guilty to that original, unamended indictment.  Immediately afterwards, at a bench conference, the State incorrectly told the trial court that the indictment had been amended to change the term "sexual organ" to "vagina," and defense counsel responded, "There wasn't a change of date or anything like that.  It's all the same."  The trial then resumed with the State reading the indictment in the remaining cause.  At the charge conference, the State said it would "abandon" the amendment to the indictment, and the trial court noted that the original indictment read in front of the jury charged penetration of the sexual organ and that Pair pleaded not guilty to that indictment.  The jury charge instructions used the wording from the original, unamended indictment, using the term "female sexual organ," not "vagina."

An indictment is essential to vest the trial court with jurisdiction, and it provides a defendant notice of the offense charged so that he may prepare, in advance of trial, an informed and effective defense.  *Riney v. State*, 28 S.W.3d

561, 565 (Tex. Crim. App. 2000). Until the indictment is read and a plea is entered, the issue is not joined between the State and the accused before the jury. *Peltier v. State*, 626 S.W.2d 30, 31 (Tex. Crim. App. [Panel Op.] 1981).

The Texas Code of Criminal Procedure creates a procedure for amending an indictment. Tex. Code Crim. Proc. Ann. art. 28.10–.11 (West 2006). However, neither the State's motion to amend nor the trial court's granting of the motion constitutes amendment of the indictment. *Riney*, 28 S.W.3d at 565–66. Instead, the motion to amend and the trial court's order granting such motion "comprise the authorization for the eventual amendment of the charging instrument pursuant to article 28.10." *Id.*; *see Valenti v. State*, 49 S.W.3d 594, 597 (Tex. App.—Fort Worth 2001, no pet.). An amendment to an indictment can be effectuated either by the physical alteration of the original indictment itself or by the incorporation into the record of a new document to serve as the "official" indictment. *Riney*, 28 S.W.3d at 565–66.

Here, the original indictment was never physically altered, nor was an altered indictment substituted for the original indictment. The State read the unamended indictment in front of the jury, and Pair entered a plea of not guilty to the unamended indictment; the issue was thus joined between Pair and the State. *See Peltier*, 626 S.W.2d at 31. Additionally, because Pair pleaded to the original, unamended indictment, there is no notice issue, regardless of the attempted amendment. *See Riney*, 28 S.W.3d at 565. We overrule Pair's second issue.

11

## V. CONCLUSION

Having overruled Pair's two issues, we affirm the judgment of the trial court.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 13, 2014