

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-17-00021-CR

BRANDON IVORY JOHNSON                                          APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
### TRIAL COURT NO. 1471551

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted appellant Brandon Ivory Johnson of assaulting his girlfriend, B.H. (Brittany).[2] He asks us to reverse the conviction. In one point, he

----------

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2) (West Supp. 2017). To protect B.H.'s anonymity, we use an alias. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

contends that the trial court abused its discretion by overruling his objection to the admission of a patrol car's dash-camera recording that, in his view, was irrelevant, inflammatory, and unfairly prejudicial. We conclude that the record does not establish harm from any error in admitting the recording, and we therefore affirm the trial court's judgment.

## Background

Brittany had a romantic relationship with Johnson in 2016. By September 2016, she became pregnant with his child. One morning that month, Brittany and Johnson began to argue about something that she saw on his phone. She walked outside her apartment and asked him to leave; he responded by pushing her against a wooden gate. She fell and later felt pain. A neighbor called the police, and an officer who responded noticed that Brittany was nervous and fearful.

The State charged Johnson with assaulting Brittany. At a jury trial, he pleaded not guilty. After receiving the parties' evidence and arguments and deliberating for approximately thirty minutes, the jury convicted Johnson. The jury heard arguments concerning his punishment and assessed ninety days' confinement. The trial court sentenced him accordingly, and he brought this appeal.

## Admission of the Recording

In his only point, Johnson contends that the trial court abused its discretion by admitting, over his objection, the dash-camera recording. The recording

2

contains nondescript video from the dash camera along with off-camera audio of a conversation between a police officer and Johnson. In the conversation, an officer asked Johnson whether they could discuss a call that the police had received. Johnson, replied, "For what?" The officer stated that the police had "just got[ten] a call, that's all." The officer asked for Johnson's last name, and he gave it. Johnson asked whether he was under arrest. The officer told Johnson that he was being detained for a family violence investigation, and Johnson protested that he had not done anything wrong. The officer told Johnson that he wanted to "do [his] job and leave." He gave Johnson the option of cooperating "civilly or . . . just [being placed] in handcuffs."

When the officer asked for Johnson's first name, Johnson instead stated that he needed to talk to a lawyer and denied committing the assault. Johnson's responses to the officer's questions became more emotional. He repeatedly stated that he had not assaulted anyone and accused the officer of grabbing his shirt. The officer asked Johnson for his name and his date of birth; Johnson did not give it but instead responded by stating, "I didn't do nothing wrong, bro." Once again, the officer asked Johnson to cooperate. At that point, Johnson told the officer that he could "suck [Johnson's] dick." He then used a racial pejorative and called the officer a "fucking pig." Johnson continued making similar statements while instructing the officer to take him to jail.

3

Before the parties began presenting evidence to the jury, the trial court held a hearing outside the jury's presence about the recording's admissibility. Johnson objected to the recording. The following exchange occurred:

> [DEFENSE COUNSEL]: [W]e'll object to the cursing spree as irrelevant to this case, and . . . under [Texas Rule of Evidence 403(b)]. Essentially he had warrants out for him. . . . [H]e gets belligerent with the officer . . . .
>
>  . . . .
>
>  . . . Your Honor, our objection is under [Texas Rule of Evidence 403] it's not relevant to whether he actually committed an assault that day or not. Clearly it's being offered for prejudicial effect. He asked for a lawyer, and they continued to tell him he's detained, and he . . . cusses the officers out, which doesn't mean . . . that he did it or didn't do it. It's not relevant . . . and it's prejudicial, and we object to it . . . .
>
>  [THE STATE]: We would argue that the jury -- obviously it does not paint him in a good light, his treatment of the officers there. I don't think that alone is a reason to not play the video. He says several times that he didn't do anything, which is pretty relevant to whether he committed the offense or not. He says himself he didn't do it. Just because he decides to mouth off to the officers isn't a good enough reason that the jury shouldn't be able to hear that.
>
>  . . . .
>
>  THE COURT: . . . I'm going to overrule your objection, and what I've heard is admissible.

On appeal, Johnson contends that the trial court's admission of the recording constitutes reversible error. He argues that his statements on the recording were inadmissible because they were inflammatory, because they were more prejudicial than probative, and because they had no relevance to the jury's determination of his guilt.

4

Assuming, without deciding, that the trial court erred by admitting the recording, we conclude that the record does not establish harm justifying reversal.[3]  *See* Tex. R. App. P. 44.2(b).  The admission of evidence that should have been excluded under the rules of evidence is generally nonconstitutional error subject to a harm analysis under rule of appellate procedure 44.2(b).  *See id.*; *Hayes v. State*, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002); *see also Mosier v. State*, No. 02-16-00159-CR, 2017 WL 2375768, at *12 (Tex. App.–Fort Worth June 1, 2017, pet. ref'd) (mem. op., not designated for publication).

Under rule 44.2(b), we disregard the error if it did not affect Johnson's substantial rights.  Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).  An error affects a defendant's substantial rights when it has a substantial and injurious effect in determining the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  Conversely, an error does not affect a substantial right if we have a "fair assurance that the error did not influence the jury, or had but a slight effect."  *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  In making this determination, we review the record as a whole, including any

---

[3]When a harm analysis is dispositive, we need not analyze error.  *See Wooten v. State*, 400 S.W.3d 601, 607 (Tex. Crim. App. 2013) ("Finding our harm analysis thus dispositive, we need not address whether the trial court did, in fact, err not to include the instruction.").

testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We consider whether the error, either alone or in context, likely moved the jury from a state of nonpersuasion to a state of persuasion concerning Johnson's guilt. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (plurality op.), *cert. denied*, 532 U.S. 944 (2001).

The admission of the recording was not the trial's main event. Brittany was the first and principal witness. She reluctantly provided details about the assault while testifying that she still had romantic feelings for Johnson and that she "want[ed] him around." She testified that Johnson had pushed her, that she had fallen partly because of the push and partly because she slipped on wet ground, and that she had later felt pain resulting from the fall. She explained that she had not called the police after the assault because she "didn't want [Johnson] to go to jail." Brittany conceded that she had asked the State to not prosecute Johnson, and concerning Johnson's character, she testified, "He's a good person. Good people make mistakes. I mean, I . . . really just need him around being I'm about to have a child in like nine weeks, and he can't do that if he's behind bars."

The jury also received testimony from a police officer who stated that when he met with Brittany after the assault, she was fearful and nervous, and one of her arms was injured. The State played the recording during that officer's

6

testimony and briefly questioned the officer about the recording's contents.[4]  The State briefly referred to the recording during its guilt-phase closing argument, but most of the State's argument concerned other matters, including details of the assault, Brittany's credibility, and a plea for law enforcement.

We cannot conclude that the jury likely disbelieved Brittany's reluctant account of assault, as circumstantially supported by the responding officer's observations of her later that day, but decided to accept the account at a later point in the trial simply because of hearing Johnson's statements in the recording.  *See Wesbrook*, 29 S.W.3d at 119; *see also Kirk v. State*, 421 S.W.3d 772, 784 (Tex. App.—Fort Worth 2014, pet. ref'd) (holding that under rule 44.2(b), no harm resulted from the admission of eight photographs because the photographs "comprise[d] an insignificant portion" of the trial's evidence and because the State did not emphasize the photographs).  Thus, we cannot conclude that the admission of the recording had a substantial and injurious effect on the jury's verdict.  *See* Tex. R. App. P. 44.2(b); *King*, 953 S.W.2d at 271.  We conclude that the record does not show the quantum of harm required for reversal, and we overrule Johnson's sole point.

---

[4]To compare, Brittany's testimony spans nineteen pages of the reporter's record.  The officer's testimony in which he describes his interaction with Johnson on the recording spans two pages.

7

**Conclusion**

Having overruled Johnson's only point, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  SUDDERTH, C.J.; KERR and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 1, 2018