

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00015-CR

ANDY FIELDS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1463549R

----------

## MEMORANDUM OPINION[1]

----------

Appellant Andy Fields appeals his third-degree felony conviction for committing assault against a member of his family or household or against someone with whom he had a dating relationship while having a prior conviction for that offense.[2]  In one point, he argues that the trial court abused its discretion

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A) (West Supp. 2017).

by admitting, over his relevance objection, one page of an exhibit that the State offered to establish the prior assault conviction.  We affirm.

**Background**

One Sunday in July 2015, R.A. (Rebecca) was relaxing at her house with her twenty-year-old daughter T.A. (Tamara)[3] and her two grandchildren.  Fields, who had been in an off-and-on intimate dating relationship with Rebecca, arrived uninvited at the house and walked into Rebecca's bedroom.  Rebecca asked him why he was there and told him to leave.  He refused, so Rebecca grabbed a backpack and a jacket that Fields had brought into the house and threw them outside.

According to Rebecca, at that point, Fields became angry.  After he verbally sparred with her for a few minutes, he began hitting her face and chest as she attempted to push him off.  Rebecca yelled for Tamara, who was asleep, to call 9-1-1.  Tamara awoke, went to Rebecca's room, saw Fields restraining Rebecca in a choke hold and hitting her, and attempted to get him off of her.  Fields responded by hitting Tamara and by threatening to push her down some stairs.  Tamara called 9-1-1, and Fields left the house.

Greg Brooks, a Benbrook police officer, received a dispatch about the assault and began looking for a suspect whom the dispatcher described as shirtless and as wearing white shorts and blue shoes.  Officer Brooks found

---

[3]We use aliases to protect the anonymity of R.A. and T.A.  *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Fields, who matched the description, sitting on a porch in the same neighborhood as Rebecca's house. When Officer Brooks approached Fields, Fields gave Officer Brooks an incorrect date of birth. Fields later admitted to Officer Brooks that he had done so and gave his correct date of birth. Officer Brooks noticed that Fields was sweaty and had fresh scratches on his back, neck, face, and chest. Fields told Officer Brooks that he had been in an argument with his girlfriend and that his girlfriend's daughter had assaulted him.

Benbrook police officer James Hatton also received a dispatch about the assault and went to Rebecca's house. When Officer Hatton walked into the house, he noticed blood on a wall, on a stairwell, in a bathroom, and on a chair. He also saw that several items had been "thrown about." To Officer Hatton, Rebecca appeared hysterical; she was screaming, shaking, crying, and wincing because of pain near one of her eyes.[4] Rebecca told Officer Hatton that Fields had accused her of "sleeping around," that Fields had punched her, and that she had attempted to defend herself against the assault. Officer Hatton noticed that Rebecca's face was swollen and that her hand was bleeding. He also noticed that Tamara had a red scratch on her arm. He concluded that Fields was the aggressor, relying in part on the fact that Fields was less credible because he had lied to Officer Brooks about his date of birth. John Whiteside, a detective

---

[4]At trial, Officer Hatton described Rebecca as "one of the most upset reporting persons [he had] ever come across."

3

with the Benbrook Police Department, joined Officer Hatton at the crime scene. He concurred with Officer Hatton's conclusion that Fields was the aggressor.

A grand jury indicted Fields with assaulting Rebecca by striking her face or by squeezing her neck. For jurisdictional purposes, the indictment alleged that Fields had a prior conviction for assault against a member of his family or household or against someone with whom he had a dating relationship. For sentence-enhancement purposes, the indictment also alleged that Fields had two prior felony convictions.

At a jury trial, Fields pleaded not guilty, and he pleaded not true to the indictment's enhancement allegations. Through his cross-examination of the State's witnesses and through his closing argument, Fields proposed to the jury that he had acted in self-defense. Rebecca testified that Fields had been previously convicted for assaulting her and that he had a history of abusing her. The trial court admitted documentary evidence of Fields's prior misdemeanor assault conviction. In the guilt-innocence jury charge, the court instructed the jury about the law of self-defense.

The jury found Fields guilty. The jury then heard further evidence and arguments concerning his punishment, found the indictment's sentence-enhancement allegations true, and assessed fifty years' confinement. The trial court sentenced Fields accordingly, and he brought this appeal.

4

## Admission of Evidence

In his only point, Fields contends that the trial court abused its discretion by overruling his relevance objection to one page of State's Exhibit 20, which the State offered to establish his prior conviction for assault against a member of his family or household or against someone with whom he had a dating relationship. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A) (making assault against a member of a family or household or against someone with whom the defendant has a dating relationship a third-degree felony if the defendant has another conviction for that offense).

State's Exhibit 20 contains four pages. The first page is a docket sheet stating that in November 2014, Fields pleaded guilty to a misdemeanor, was convicted, and received a sentence of ninety days' confinement. The second page is the judgment related to that conviction; the judgment states that Fields pleaded guilty to "ASSAULT BODILY INJURY-FM," a class A misdemeanor. The third page is a charging instrument alleging that in September 2014, Fields assaulted Rebecca by striking her upper body with his hand. The fourth page is an earlier-filed complaint for the same case, alleging, unlike the charging instrument, that Fields assaulted Rebecca by applying pressure to her neck or throat with his hand and by impeding her breathing.[5]

---

[5]This complaint alleged a felony assault. *See* Tex. Penal Code Ann. § 22.01(b)(2)(B). The charging instrument to which Fields pleaded guilty in 2014, which omitted the allegations about Fields applying pressure to Rebecca's neck and impeding her breathing, alleged a misdemeanor assault. *See id.*

On appeal, Fields contends that page four was inadmissible because it bore "no relevance to the jurisdictional conviction, which [was] for misdemeanor assault bodily injury." He argues that page four's admission harmed him because that page "introduced an extraneous offense to the guilt or innocence phase of the trial."

We conclude that we need not decide whether the trial court abused its discretion by admitting page four because any such error did not result in harm that justifies reversing Fields's conviction.[6]  *See* Tex. R. App. P. 44.2(b).

We must disregard any nonconstitutional error that does not affect an appellant's substantial rights.[7]  *See id.*  An error affects an appellant's substantial rights when it has a substantial and injurious effect or influence in determining the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."

---

§ 22.01(a)(1), (b).  In response to Fields's relevance objection in the trial court, a prosecutor argued, "It's a document under seal.  I mean, it's a certified copy of a judgment."  The trial court overruled Fields's objection without explaining its reasoning.

[6]An error analysis is not required when a harm analysis is dispositive.  *See Wooten v. State*, 400 S.W.3d 601, 607 (Tex. Crim. App. 2013).

[7]Fields concedes that the trial court's alleged error was "not constitutional in nature" and that rule 44.2(b)'s harmless error standard applies.

*Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56. We must determine whether the error likely moved the jury from a state of nonpersuasion to a state of persuasion concerning Fields's guilt. *See Snowden v. State*, 353 S.W.3d 815, 825 (Tex. Crim. App. 2011); *Murkledove v. State*, 437 S.W.3d 17, 29 (Tex. App.—Fort Worth 2014, pet. dism'd).

We first consider the alleged error in context with other evidence and in light of Fields's defensive theory. *Motilla*, 78 S.W.3d at 355. As explained above, Fields's theory in the trial court was that he acted in self-defense during the altercation with Rebecca and Tamara. To evaluate this theory, the jury considered first-hand accounts of the altercation from Rebecca and Tamara and Fields's challenges to those accounts through cross-examination. The jury also considered an audio recording of Tamara's 9-1-1 call; testimony from officers who interacted with Fields, Rebecca, and Tamara shortly after the altercation and

7

observed their demeanor; and photographs of Fields's and Rebecca's injuries and of the state of Rebecca's home following the altercation. In the context of this evidence that focused the jury's attention on the charge at issue, we cannot conclude that the jury likely predicated its decision of Fields's guilt on page four's extraneous allegation.[8] Furthermore, even if the jury was prone to base its decision to convict Fields on his prior misconduct rather than on testimony and evidence related to the July 2015 assault, page four's allegation of such misconduct was not likely as compelling as Rebecca's and Tamara's testimony—received by the jury without objection—that Fields had repeatedly abused Rebecca in the past.

We next consider the alleged error in light of the trial court's jury charge. *See id.* The trial court's guilt-innocence jury charge instructed the jury that it could not consider evidence of Fields's extraneous offenses unless it found beyond a reasonable doubt that he had committed them. The charge also instructed the jury that even if it made such a finding, it could consider the offenses only for determining "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any, in connection with this offense." We presume that the jury followed these instructions and therefore did not consider page four's allegation as evidence of Fields's guilt for the July

---

[8]As the State argues, the record reflects that the jury sent notes to the trial court during deliberations, including a note asking to see "pictures of the parties involved," but does not reflect that the jury requested to review State's Exhibit 20.

8

2015 assault. *See Casanova v. State*, 383 S.W.3d 530, 543 (Tex. Crim. App. 2012) (reciting the "usual presumption that jurors follow the trial court's explicit instructions to the letter").

Finally, we consider whether the State emphasized the error. *See Motilla*, 78 S.W.3d at 355. The State did not emphasize page four's allegation (that Fields had choked Rebecca and had impeded her breathing during his September 2014 assault) during its questioning of Rebecca or during its closing argument. Instead, during Fields's cross-examination of Rebecca, he elicited testimony concerning the allegation.

For all of these reasons, we cannot conclude that the trial court's alleged error in admitting page four of State's Exhibit 20 affected Fields's substantial rights. *See* Tex. R. App. P. 44.2(b); *Motilla*, 78 S.W.3d at 355. Because the record does not reveal reversible error, we overrule Fields's sole point.

## Conclusion

Having overruled Fields's only point, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  SUDDERTH, C.J.; PITTMAN and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 1, 2018

9