

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00125-CR

_____

DEMARIAE MAURICE RICE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from 432nd District Court
Tarrant County, Texas
Trial Court No. 1776629

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Demariae Maurice Rice was convicted by a jury of three counts of aggravated sexual assault, one count of burglary of a habitation with intent to commit sexual assault, and one count of assault of a family member by impeding breath or circulation. After hearing evidence at punishment, the jury assessed sentences of 25 years for the sexual assault and burglary counts and 10 years for the family-violence assault count. In one point of error, Rice complains that the punishment charge impermissibly informed the jury about the existence of good-conduct time credit. We affirm.

## Background

Rice and Melissa[1] had been dating off-and-on since the end of 2010. They began to live together in 2015. Despite their having broken up in 2019, Rice retained a key to Melissa's apartment. But Melissa set some boundaries—for example, Rice was not allowed to come over at night.

Rice's demeanor changed for the worse when Melissa started dating a man named Brian. On a Friday night in October 2020, Brian came to Melissa's apartment intending to stay for the night. But when Rice showed up at her door and began beating at it, Brian escaped onto the balcony, jumped off, and ran away.

---

[1]We use an alias to refer to the complainant. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982); 2d Tex. App. (Fort Worth) Loc. R. 7.

Rice eventually kicked in the door and started searching the apartment for the other man. When he saw Brian's phone, Rice "flipped out," started hitting Melissa, and dragged her by her hair into the bedroom. He choked Melissa until she begged him not to kill her, and then he forced her to have sex with him. Later, Melissa was able to run out of her apartment but returned, worried that Rice would ruin her possessions. As she reentered the apartment, Melissa asked a neighbor to phone 911. Rice told the neighbor everything was okay and closed the apartment door. When police later arrived, Rice forced Melissa into the bathroom and threatened to kill her if she talked. The police left.

After Melissa was eventually able to leave her apartment, she sought help from her cousin and his girlfriend, who drove her to their apartment and called the police. Melissa's face was bruised and she had lost part of her scalp from Rice's hair-pulling.

## The Good-Conduct Time Instruction

In his sole point of error, Rice argues that the trial court incorrectly instructed the jury at punishment that, regarding counts one through four—the three counts of aggravated sexual assault and the one count of burglary of a habitation with intent to commit sexual assault—Rice was eligible to receive good-conduct time credits. We disagree and hold that the jury was correctly instructed.

Article 37.07, Section 4 of the Code of Criminal Procedure mandates how a jury determining punishment should be instructed regarding parole and good-conduct time. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4. Depending on the criminal

offense or the level of punishment, a jury shall be instructed as to when a defendant might become eligible for parole. *See id.* § 4(a)–(c).

In Rice's case, he was found guilty of aggravated sexual assault in counts one through three and burglary of a habitation with intent to commit sexual assault in count four. Each of these offenses are listed in Section 4(a).[2] Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a). Because Section 4(a) refers only to parole, a jury should not be informed about the existence of good-conduct time for counts one through four. *See Weaver v. State*, No. 02-21-00081-CR, 2022 WL 2978730, at *5 (Tex. App.—Fort Worth July 28, 2022, pet. ref'd) (mem. op., not designated for publication) (holding it was error to give good-conduct time instruction at sexual assault defendant's punishment phase).

But Rice was also found guilty on another count, i.e., count seven, of assault of a family member by impeding breath or circulation. Because this is a felony of the third degree, the instruction language in Section 4(c) of article 37.07 applies. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(c). That subsection mandates that a jury should be told of the existence of good-conduct time. *Id.*

The trial court's charge correctly instructed the jury only as to parole for counts one through four and as to parole and good-conduct time for count seven:

---

[2]*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (applying this section to offenses listed in Tex. Code Crim. Proc. Ann. art. 42A.054(a) (which include aggravated sexual assault and burglary of a habitation with intent to commit a felony)).

The length of time for which a defendant is imprisoned may be reduced by the award of parole.

Under the law applicable in Counts One, Two, Three, and Four, if the [d]efendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

Under the law applicable in Count Seven, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less. Eligibility for parole does not guarantee parole will be granted.

*Under the law applicable in this case, the [d]efendant, if sentenced to a term of imprisonment, may earn early parole eligibility through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.*

It cannot accurately be predicted how the parole law might be applied to this defendant if sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities.

You may consider the existence of the parole law. You are not to consider the manner in which the parole law may be applied to this particular defendant. [Emphasis added.]

Rice asserts that the italicized instruction was not tied to his conviction in count seven—impliedly arguing that the jury could have mistakenly applied the good-conduct time language to counts one through four as well. We disagree.

5

In the paragraph addressing only counts one through four, the court instructs the jury regarding parole, and only parole. No mention is made of good-conduct time in that paragraph. But in the paragraph that follows—the paragraph that addresses only count seven—the trial court first introduces the concept of good-conduct time. In that paragraph, the court instructs the jury on how good-conduct time might factor into parole as it relates to count seven. Then in the next paragraph the court explains how good-conduct time is awarded. Given how these paragraphs were structured, we disagree with Rice's contention that the trial court instructed the jury that he was eligible to receive good-conduct time credits on counts one through four. And because the statute authorized a good-conduct time instruction for the third-degree felony offense of family violence, we disagree with Rice's contention that the trial court erred by including good-conduct language related to that offense in its charge. *See Bragg v. State*, No. 02-23-00151-CR, 2024 WL 1561500, at \*2 (Tex. App.—Fort Worth Apr. 11, 2024, no pet.) (mem. op., not designated for publication) (overruling complaint about good-conduct time instruction where such language was required by punishment statute).

The language employed was specifically authorized by the statute. We cannot fault the trial court for correctly instructing the jury on good-conduct time and

6

parole.[3] *See Martin v. State*, 823 S.W.2d 395, 396–97 (Tex. App.—Texarkana 1992, pet. ref'd).

## Conclusion

Having overruled Rice's sole complaint, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 6, 2024

---

[3]As the State candidly points out, the trial court erroneously employed the language of Section 4(b) instead of Section 4(c) regarding count seven. The pertinent language of Section 4(b) informs the jury that parole eligibility will not occur until "the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less," Tex. Code Crim. Proc. Ann. art. 37.07, § 4(b). In contrast, Section 4(c) caps parole eligibility at one-fourth the sentence (plus good-conduct time). Tex. Code Crim. Proc. Ann. art. 37.07, § 4(c). But the trial court's error in this respect does not change our analysis. First, Rice does not complain about this error on appeal. Second, we cannot see how this error could have harmed Rice—the possibility of parole eligibility in 15 years is simply irrelevant where the maximum period of incarceration (for assault of a family member by impeding breath or circulation) is 10 years. *See* Tex. Penal Code Ann. § 12.34(a).