

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00307-CR

———————————————————

KYLE GORDON COX, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR15602

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Appellant Kyle Gordon Cox was convicted of indecency with a child by exposure. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A). A jury determined his punishment and assessed a sentence of three years in prison. In two issues, Cox complains that the evidence was insufficient to demonstrate his sexual intent and that the trial court should have excused a juror for demonstrated bias. We will affirm.

**Background**

Cox is the father of Holly.[1] Holly normally lived with her mother, Elizabeth, but visited Cox once a month. One evening in June of 2021, when Holly was four, she told her mother, "Daddy showed me his no-nos," meaning his genitals. Elizabeth was shocked and called Cox. He refused to talk on the telephone, but told her they could discuss it at the next visitation.

At the next visit, Cox met Elizabeth but demanded that she leave her phone and any recording devices in her car. Elizabeth confronted Cox with the information that he had exposed his penis to Holly. Cox responded that he showed her because "[s]he wanted to know." Elizabeth pointed out that exposing himself was not an appropriate way to educate Holly on the differences between the sexes.

---

[1]To protect the complainant's anonymity, we use aliases to refer to her and her mother. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Elizabeth called Child Protective Services. Eventually, Dan Bradshaw, an investigator with the Hood County District Attorney's Office began to look into the matter. Cox gave two recorded non-custodial statements to Investigator Bradshaw. Cox told him:

- Holly had asked Cox the difference between boys and girls. Cox's purpose in showing her his penis was to explain a difference.

- Cox wanted to show Holly his penis because, in his childhood, Cox had been required to rely on neighborhood children to gain knowledge about sex differences. He did not want the same thing to happen to Holly.

- Cox had an erection when he exposed his penis to Holly.

- Cox did not know why he had an erection, but he also said that it was caused by the "wrestling" that he had been engaging in with Holly immediately prior to the exposure.

- In his sexual relationships, Cox enjoyed being hit and feeling pain.

- Cox did not know how many times he had achieved an erection caused by wrestling with Holly. He also did not know if similar erections would happen in the future.

- Because it was erect, Cox did not need to support his penis with his hands when he showed it to Holly.

- Cox showed his penis and testicles to Holly for a duration of between thirty seconds and one minute.

In Investigator Bradshaw's opinion, he had given Cox "every opportunity to come up with any kind of other story that he could come up with." After his second interview, the investigator procured a warrant and arrested Cox.

3

## Legal Sufficiency of Intent

In his first issue, Cox argues that the evidence was insufficient to demonstrate that he exposed his genitals with the intent to arouse or gratify the sexual desire of any person. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A) (defining indecency offense to require, among other things, the "intent to arouse or gratify the sexual desire of any person"). Specifically, he relies on his statements to both Elizabeth and law enforcement that his purpose in exposing himself was to "educate" Holly about differences between the sexes.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We must scrutinize circumstantial evidence of intent as we do other elements of an offense. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). But when a record supports conflicting inferences, we "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

A person commits the offense of indecency with a child if he exposes his genitals knowing a child is present "with [the] intent to arouse or gratify the sexual desire of any person." Tex. Penal Code Ann. § 21.11(a)(2)(A). "[T]he requisite

4

specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks[,] and all surrounding circumstances." *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *see Stephenson v. State*, 673 S.W.3d 370, 384 (Tex. App.—Fort Worth 2023, pet. ref'd). The defendant need not admit his sexual intent for the jury to infer that such intent was present. *Stephenson*, 673 S.W.3d at 384.

Here, the evidence was sufficient to support a finding that Cox acted with sexual intent. Although Cox maintained during his conversations with Investigator Bradshaw that his motive was educational, he did admit—several times—that his penis was erect when he showed it to Holly. The undisputed fact that Cox's penis was erect when he exposed himself to Holly would normally, by itself, be sufficient evidence to justify a jury's verdict that he intended to gratify his sexual desire. *See Rodriquez v. State*, 634 S.W.2d 48, 49 (Tex. App.—Amarillo 1982, no pet.) (holding sexual gratification element established by evidence that defendant's exposed penis was erect and he had a "big old smile on his face"). And certainly the jury was not compelled (in the face of the evidence of an erection) to accept Cox's story that his sole motivation was educational. *See Stephenson*, 673 S.W.3d at 384 (holding jury was not required to accept defendant's explanation that his conduct was meant as a joke and was not sexual).

But there was more. Cox told Investigator Bradshaw that he derived sexual enjoyment from the pain of being hit by a sexual partner, and he also said that his

5

erection was the result of his "roughhousing" with Holly. Indeed, Cox could not remember how many times he had achieved an erection as a result of wrestling with his daughter in the past, and he could not rule out that it would happen again. From this, a rational juror could deduce that Cox's exposure of his genitals was done with an intent to arouse or gratify his own sexual desires.

We overrule Cox's first issue.

## The Trial Court's Refusal to Dismiss a Juror

In his second issue,[2] Cox argues that the trial court should have found a juror to be "disabled," removed him, and proceeded with a jury of eleven. Cox bases his argument on his assertion that the particular juror "flipped" Cox off with his finger while the jury was listening to the judge's initial instructions.

Before testimony began in Cox's trial, Cox (who was initially representing himself) made known to the trial court that, the day before, one of the empaneled jurors was "flipping [him] off." He asked that the trial court view security video footage of the jury during the moment in question. The judge examined the footage in chambers, then told Cox that what he saw was a particular juror scratching his nose with his index finger. The judge had printed out still photos of the event and showed them to Cox. Cox said, "I understand" and did not request any further relief.

---

[2]We granted Cox leave to file an amended brief raising this second issue. The State did not respond to Cox's amended brief.

6

During trial, Cox asked for and was appointed defense counsel. Counsel reviewed the footage and again raised a claim that the juror in question could not be fair and was "already prejudiced" against Cox. She requested either a mistrial or that the particular juror be removed and that trial proceed with only eleven jurors. The trial judge explained that his review of the video footage indicated that the juror's fingers were resting on his cheek, that the index finger and middle finger were never separated, and that the juror was looking at the judge the entire time.

The judge offered to bring the juror in for questioning but denied Cox's motion for mistrial and request to proceed with eleven jurors. Defense counsel declined the court's invitation to question the juror.

On appeal, Cox disagrees with the trial court's finding, asserting that the juror was indeed obscenely gesturing at Cox. Relying on Tex. Code Crim. Proc. Ann. art. 36.29, he argues that the juror in question was "disabled" because of "extreme bias and prejudice" and that the trial court should have removed that juror and continued the trial with eleven. Cox does not complain on appeal about the trial court's refusal to declare a mistrial.

Article 36.29 provides that not less than twelve jurors can render and return a verdict in a felony case. Tex. Code Crim. Proc. Ann. art. 36.29(a). There is, however, an exception: where the trial court determines that a juror has become "disabled," a verdict may be rendered by fewer than twelve jurors. *Id.* For a juror to qualify as "disabled" under Article 36.29, the Court of Criminal Appeals has interpreted that

7

article to require (1) that the juror suffer from a physical illness, mental condition, or emotional state that would hinder or inhibit the juror from performing his duties as a juror or (2) that the juror suffer from a condition that would inhibit him from fully and fairly performing the functions of a juror. *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012).

The trial court has discretion to determine whether a juror has become disabled under Article 36.29 of the Code of Criminal Procedure. *Id.* Without substituting our own judgment for that of the trial court, we must assess whether, after viewing the evidence in the light most favorable to the trial court's ruling, the ruling was arbitrary or unreasonable. *Id.* at 784. We must uphold the trial court's ruling if it falls within the zone of reasonable disagreement. *Id.*

Assuming without deciding that a juror who displays an obscene gesture to a defendant has demonstrated a level of bias that could render him "disabled" under Article 36.29,[3] we conclude that the trial court did not abuse its discretion in refusing to unseat the juror in question. The security footage was made part of the appellate record, and that footage supports the trial court's conclusion: the juror's fingers were resting on his nose, he was paying attention to the trial judge, and he did not look in

---

[3]Bias on a juror's part does not automatically render him "disabled," *see Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990), but it might constitute a mental condition serious enough to "inhibit[] a juror from fully and fairly performing the functions of a juror," *see Reyes v. State*, 30 S.W.3d 409, 411–12 (Tex. Crim. App. 2000).

Cox's direction while his fingers were in that position. The still photo of the juror in question, blown up to a reasonable degree, is even clearer evidence that the juror was not "flipping off" anyone, much less Cox. We hold that the trial court did not abuse its discretion in refusing to find that the juror was biased to such an extent that he was "disabled" under Article 36.29. *See* Tex. Code Crim. Proc. Ann. art. 36.29; *Scales*, 380 S.W.3d at 783. We overrule Cox's second issue.

### Conclusion

Having overruled Cox's two issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 22, 2024