

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00104-CR

_____

SHANNON LABRICE WILLIAMS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1515715D

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

A jury convicted appellant Shannon Labrice Williams of continuous sexual abuse (CSA) of a young child and of indecency with a child by contact. The trial court sentenced Williams to fifty years' confinement on the CSA count and to ten years' confinement on the indecency count, with the sentences to be served concurrently. Williams raises five issues on appeal. In his first three issues, Williams complains about alleged errors in the jury charge. In his final two issues, Williams complains that the trial court abused its discretion by admitting certain evidence at his trial. We will affirm.

## II. BACKGROUND

Williams was indicted for the continuous sexual abuse of Kaylee,[1] a relative, and for indecency with Kaylee by contact.[2] At Williams's trial, Kaylee's mother explained that Williams lived with Kaylee's family at various points between 2012 and 2017 or 2018.[3] Kaylee's mother testified that she and her husband allowed Williams

---

[1]To protect the anonymity of the minor in this case, we will use aliases to refer to some of the individuals named herein. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[2]Williams was indicted for other counts relating to his sexual abuse of Kaylee, but those other counts were later waived by the State.

[3]Kaylee's family consisted of Kaylee, her mother, her father, and her two brothers.

to live with them during these periods because Williams "didn't have anywhere to go, and he is family." She testified that Williams stayed with the family at an apartment complex where they were residing for part of the summer in 2012 or 2013, around the time when Kaylee was in the first grade.[4] At the apartment complex, Kaylee had her own bedroom, while Williams slept in the living room. Kaylee's mother testified that Williams later stayed with the family for around six months in 2014 or 2015 at a house where they were residing. Williams also stayed with the family at their home for "about a year" in 2017 or 2018 when Kaylee was "going into fifth and sixth grade." In that home, Kaylee had her own bedroom upstairs, her brothers shared a bedroom upstairs, Williams slept in an office upstairs, while Kaylee's parents slept in a bedroom downstairs.

Kaylee testified[5] that when she was six, Williams entered her bedroom and whispered "very sexual things in [her] ear," although he did not touch her on that occasion. Kaylee stated that Williams touched her inappropriately for the first time a couple of years later—she said she was in the fourth grade—when he entered her bedroom at night, removed her pants and underwear, licked her vagina, and lifted up her shirt and fondled her breasts. Kaylee testified about another occasion that occurred in "like the beginning of fifth grade," where Williams "did the exact same

___

[4]Kaylee was born in 2006.

[5]Kaylee was thirteen at the time of trial.

3

thing"—she again described Williams entering her bedroom at night, removing her pants and underwear, licking her vagina, and fondling her breasts. Kaylee testified that Williams entered her room at night and sexually abused her approximately once or twice a week over a two-year period when she was in the fourth and fifth grades. She testified that on some occasions Williams would lick her vagina, on other occasions he would "put his hand on [her] vagina," on some occasions he would touch her breasts, and that on one occasion he grabbed her hand and made her touch his penis.

Kaylee testified that she was having suicidal thoughts when she was in fifth grade and that she told some of her friends about the abuse. One of her friends told a school counselor that Kaylee was having suicidal thoughts, and Kaylee was called in to talk to the counselor. At trial, the counselor testified that Kaylee told her that Williams "had sexually abused her and had since she was six years old." The counselor testified that Kaylee described how Williams would touch her breasts, that he would "suck down there"—referring to her vagina area—and that he would make her touch him on his "private parts." The counselor testified that she contacted Child Protective Services (CPS) immediately after Kaylee reported the abuse.

Following her outcry to the counselor, Kaylee was taken to a sexual assault nurse examiner (SANE) for a sexual assault exam. The SANE's report was admitted into evidence over Williams's global hearsay objection.

4

At trial, Kaylee's cousin, Aubrey, testified about an occasion when she was playing a game with Williams and Kaylee, and she saw Williams put his hand under Kaylee's skirt. Later in the trial, Kaylee testified, over Williams's objection, that a report had been made to CPS years earlier regarding Williams supposedly molesting both Kaylee and Aubrey.

At the charge conference, Williams's counsel complained that the charge did not require the jury to unanimously agree on the specific underlying acts of sexual abuse. The trial court noted the complaint but stated that the complained-of instruction was an accurate reflection of state law. Williams made no other complaints regarding the charge to the trial court.

## III. DISCUSSION

### A. Complaints Regarding Alleged Errors in the Jury Charge

Williams's first three issues concern alleged errors in the jury charge.

#### 1. Standard of Review

A trial court is required to prepare a jury charge that accurately sets out the law applicable to the specific offenses charged. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). If a defendant complains on appeal about an erroneous instruction in the charge (or about the lack of a proper instruction) regarding an area of law that is considered the law applicable to the case, whether the defendant objected to the trial court determines the applicable standard for assessing harm. *See Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171

5

(Tex. Crim. App. 1985) (op. on reh'g). If a proper objection was made to the trial court regarding an error in the jury charge, a reviewing court determines whether the error caused the defendant some harm. *Almanza*, 686 S.W.2d at 171. If no objection was made to the trial court, a reviewing court determines whether the error caused the defendant egregious harm. *Nava*, 415 S.W.3d at 298; *Almanza*, 686 S.W.2d at 171.

Egregious harm is a "high and difficult standard" to meet, and such a determination must be "borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). The analysis for egregious harm is fact specific and is done on a "case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). We consider the following factors in evaluating egregious harm: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

6

### 2. Complaint that the Trial Court Erred by Omitting All Culpable Mental States in the Charge's Application Paragraph

In his first issue, Williams argues that the trial court erred by omitting all culpable mental states in the charge's application paragraph. The crux of Williams's argument is that the charge did not contain a culpability requirement for CSA in either the abstract or application portions and that although the abstract portion contained a culpability requirement for the underlying offenses, the application paragraph did not contain a culpability requirement for the underlying offenses.

As to the argument that the charge lacked a culpability requirement for CSA, Williams candidly acknowledges that several Texas courts of appeals have held that the CSA statute does not require general mental culpability beyond the mental culpability required for its constituent offenses. *See Evans v. State*, No. 06-20-00035-CR, 2020 WL 6685038, at \*5 (Tex. App.—Texarkana Nov. 13, 2020, pet. ref'd) (mem. op., not designated for publication); *Beyer v. State*, No. 06-19-00263-CR, 2020 WL 3865735, at \*1 (Tex. App.—Texarkana July 9, 2020, pet. ref'd) (mem. op., not designated for publication); *O'Neal v. State*, No. 06-19-00216-CR, 2020 WL 3455638, at \*3 (Tex. App.—Texarkana June 24, 2020, no pet.) (mem. op., not designated for publication); *Colon v. State*, No. 13-19-00087-CR, 2020 WL 1467149, at \*3–4 (Tex. App.—Corpus Christi March 26, 2020, no pet.) (mem. op., not designated for publication); *Buxton v. State*, 526 S.W.3d 666, 684 (Tex. App.—Houston [1st Dist.]

2017, pet. ref'd); *Lane v. State*, 357 S.W.3d 770, 776–77 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

We agree with our sister courts that the CSA statute does not require general mental culpability beyond the mental culpability required for its constituent offenses. The CSA statute states that a person commits the offense of CSA of a young child if (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age, regardless of whether the actor knows the age of the victim at the time of the offense. Tex. Penal Code Ann. § 21.02(b). This portion of the statute requires no additional mens rea because an "act of sexual abuse" under the statute "means any act that is a violation of one or more of the [listed] penal laws," including indecency with a child and aggravated sexual assault. *Id.* § 21.02(c). As a result, the CSA statute "is defined in terms of other acts that by their terms require a culpable mental state" and "need not prescribe some additional mental state because its actus reus is merely the repeated commission of acts already requiring culpable mental states." *Lane*, 357 S.W.3d at 776 (emphasis omitted).

Williams further complains that the charge's application paragraph did not contain a culpability requirement for the underlying offenses. But, "[w]hen we review a charge for alleged error, we must examine the charge as a whole . . . ." *Dinkins v.*

8

*State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). And while the application paragraph "'specifies the factual circumstances under which the jury should convict or acquit,' it need not set forth specifically all of the elements necessary to convict a defendant if those elements have been accurately set forth in another section of the charge." *Riley v. State*, 447 S.W.3d 918, 923 (Tex. App.—Texarkana 2014, pet. ref'd) (quoting *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012)). Accordingly, "the Texas Court of Criminal Appeals has held that there is no error where the abstract portion of the charge supplies a culpable mental state not specified in the application paragraph." *O'Neal*, 2020 WL 3455638, at *4 (citing *Dinkins*, 894 S.W.2d at 339 and *Riley*, 447 S.W.3d at 923–94); *see also Vasquez*, 389 S.W.3d at 367 ("[I]f the application paragraph necessarily and unambiguously refers to another paragraph of the jury charge, then a conviction is authorized, and the trial judge need not *sua sponte* cut and paste that definition into the application paragraph.") (internal quotations omitted).

And, here, the abstract portion of the jury charge instructed the jury regarding the mens rea requirements for the underlying acts of sexual abuse, and the application paragraph referred back to the definitions of the underlying acts, referring to them by name. Thus, we reject Williams's contention that the trial court erred by omitting all culpable mental states in the charge's application paragraph. *See Dinkins*, 894 S.W.2d at 339; *O'Neal*, 2020 WL 3455638, at *3.

Even assuming the trial court had erred, Williams did not object to the jury charge on this basis, so we could only reverse if egregious harm occurred as a result of the error. *See Nava*, 415 S.W.3d at 298; *Almanza*, 686 S.W.2d at 171. As mentioned above, we consider the following factors in evaluating egregious harm: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

In considering the charge as a whole, we note that the abstract portion of the jury charge instructed the jury regarding the mens rea requirements for the underlying acts of sexual abuse. Williams acknowledges that the abstract portion included instructions on the mens rea of the underlying offenses, noting that "[t]he only mens rea that was mentioned was in the abstract and only as to the underlying offenses."

In considering the state of the evidence, Kaylee testified that Williams entered her bedroom at night once or twice a week over a two-year period. During those occasions, Williams would lick or touch her vagina, and on at least one occasion, Williams grabbed Kaylee's hand and made her touch his penis. Kaylee testified that Williams would whisper in her ear on some of these occasions, described him whispering "very sexual things" to her on another occasion, and testified that Williams once asked her "how it felt" and that he "hope[d] [she] liked it."

10

As for the arguments of counsel, there was no mention of any of the mens rea requirements during closing arguments; rather, the closing arguments focused on whether Williams had committed the abuse or not. As to other relevant information from the trial, we note that during voir dire, the State mentioned that aggravated sexual assault of a child occurs when "[a] defendant . . . intentionally or knowingly causes the sexual organ to contact . . ." and that indecency with a child occurs when "the defendant did it with the intent to arouse or gratify the sexual desires of any person."

Based on our review of these factors, we cannot say that the alleged error egregiously harmed Williams. *See Nava*, 415 S.W.3d at 298; *Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 171. We overrule Williams's first issue.

### 3. Complaint that the Trial Court Erred by Giving an Improper Instruction Regarding the CSA Statute's Duration Requirement

In his second issue, Williams argues that the trial court erred by giving an improper instruction regarding the CSA statute's duration requirement. Williams argues that the charge authorized the jury to convict him of CSA without requiring a finding that he had committed two underlying acts of sexual abuse during a period that is thirty or more days in duration.

Pursuant to the CSA statute, a person commits continuous sexual abuse of a young child if "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" against a child younger than fourteen.

11

Tex. Penal Code Ann. § 21.02(b). The law requires that the last act of sexual abuse occur on at least the twenty-ninth day after the day of the first act. *See Clark v. State*, No. 02-19-00131-CR, 2020 WL 5949925, at *3 (Tex. App.—Fort Worth Oct. 8, 2020, no pet.) (mem. op., not designated for publication) ("[T]here must be some proof, whether circumstantial or direct, that the last act of sexual abuse occurred on at least the 29th day after the day of the first act.").

Here, the jury charge contains the following relevant portions concerning the CSA statute's duration requirement:

> A person commits the offense of continuous sexual abuse of a young child or children if, during a period of time that is 30 or more days in duration, the person commits two or more acts of sexual abuse . . . .
>
> . . . .
>
> [I]n order to find the defendant guilty of the offense of continuous sexual abuse of a young child or children, you must unanimously agree that the defendant, during a period that is 30 or more days in duration, on or about the 12th day of June 2012, through the 16th day of April 2017, as charged in the indictment, committed two or more acts of sexual abuse.
>
> . . . .

### APPLICATION PARAGRAPH ONE

> Now, if you find from the evidence beyond a reasonable doubt, that [Williams] . . . during a period of time that is 30 days or more in duration, on or about the 12th day of June 2012, through the 16th day of April 2017, did commit two or more acts of sexual abuse . . . .

Williams contends that the above language was improper because it "permitted a conviction if the jury believed any two acts occurred between the dates alleged in the indictment, without regard to the 30 day requirement."

Williams also complains that the trial court did not follow the pattern jury charge for CSA. Specifically, he points to an instruction in the pattern jury charge that states, "[Y]ou must all agree that at least thirty days passed between the first and last acts of sexual abuse committed by the defendant." Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Crimes Against Persons & Property* PJC 84.2 (2016). Although a trial court is not required to follow the pattern jury charges, the pattern jury charges should act as a guide for both the trial court and the bar. *Rembert Enters., Inc. v. 1309, LLC*, No. 02-18-00330-CV, 2019 WL 3334425, at *1 n.1 (Tex. App.—Fort Worth July 25, 2019, no pet.) (mem. op.); *Marin Real Est. Partners, L.P. v. Vogt*, 373 S.W.3d 57, 90 (Tex. App.—San Antonio 2011, no pet.).

The crux of the argument seems to be that because the jury charge mentioned "a period of time that is 30 days or more in duration" and then included two dates that were themselves more than thirty days apart in the same sentence—June 12, 2012, and April 16, 2017—the instructions indicated that the jury could convict Williams based on two acts that occurred between those two dates, even if the acts themselves were less than thirty days apart.[6] The State counters that the above

_____

[6]We note that the pattern jury charge for CSA instructs that one of the elements for CSA is that "the defendant in [*county*] County, Texas, during a period

13

language in the charge "directly tracks the language of the [CSA] statute" and, thus, "it cannot be error."[7]

We will assume, without deciding, that the trial court erred by giving an improper instruction regarding the CSA statute's duration requirement.[8]   Because Williams did not object to the jury charge on this basis at trial, we must determine

---

between on or about [*date*] and on or about [*date*], committed two or more of the following alleged acts of sexual abuse . . . ."  *Texas Criminal Pattern Jury Charges: Crimes Against Persons & Property* PJC 84.2.  That pattern jury charge differs from the one here that stated, in pertinent part, "during a period of time that is 30 days or more in duration, on or about the 12th day of June 2012, through the 16th day of April 2017."

[7]Of course, the language in the jury charge does not "directly track" the language of the CSA statute because the CSA statute does not include a specific date range for the offenses like the jury charge does.  *Compare* Tex. Penal Code Ann. § 21.02(b) (stating that a person commits an offense if "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse") with the jury charge here (stating that a person commits an offense if "during a period of time that is 30 days or more in duration, on or about the 12th day of June 2012, through the 16th day of April 2017, [the person] did commit two or more acts of sexual abuse").

[8]An error analysis is not required when a harm analysis is dispositive.  *Wooten v. State*, 400 S.W.3d 601, 607 (Tex. Crim. App. 2013) ("Finding our harm analysis thus dispositive, we need not address whether the trial court did, in fact, err not to include the instruction."); *Delangelhernandez v. State*, No. 02-19-00022-CR, 2020 WL 101879, at *2 (Tex. App.—Fort Worth Jan. 9, 2020, no pet.) (mem. op., not designated for publication) (assuming, without deciding, that the jury charge contained error but concluding that the assumed error did not cause egregious harm); *Roberts v. State*, No. 02-17-00108-CR, 2018 WL 1755223, at *3 n.5 (Tex. App.—Fort Worth Apr. 12, 2018, no pet.) (per curiam) (mem. op., not designated for publication) (same). Because we will ultimately determine that the alleged error did not cause egregious harm, we will simply assume error, without deciding it.

whether egregious harm occurred as a result of the alleged error. *See Nava*, 415 S.W.3d at 298; *Almanza*, 686 S.W.2d at 171.

Here, when considering the entire jury charge, we note that while the application paragraph did not track the CSA statute,[9] the abstract portion of the charge did—the abstract portion noted that "[a] person commits the offense of continuous sexual abuse of a young child or children if, during a period of time that is 30 or more days in duration, the person commits two or more acts of sexual abuse." The inclusion of that language in the abstract portion acts to mitigate any harm from erroneous language in the application paragraph. *See Jimenez v. State*, No. 07-13-00303-CR, 2015 WL 6522867, at *6 (Tex. App.—Amarillo Oct. 26, 2015, pet. ref'd) (mem. op., not designated for publication) (noting that correct instructions elsewhere in the charge "serve to mitigate the impact of the erroneous application paragraph language").

As to the state of the evidence, Kaylee testified that Williams entered her room at night and sexually abused her approximately once or twice a week over a two-year period when she was in the fourth and fifth grades. When pressed on cross-examination, Kaylee stated that the abuse happened "over 200 times." Kaylee also specifically described an occasion that she said had occurred when she was in the

---

[9]We note that the indictment also did not "directly track" the CSA statute, as it alleged that Williams "during a period of time that is 30 days or more in duration, on or about the 12th day of June 2012, through the 16th day of April 2017, did commit two or more acts of sexual abuse . . . ."

fourth grade where Williams licked her vagina and fondled her breasts, and she specifically described another occasion that she said had occurred in "like the beginning of fifth grade" where Williams "did the exact same thing." The state of the evidence strongly weighs against a finding of egregious harm because there was no evidence that the only acts of sexual abuse occurred less than thirty days apart; to the contrary, there was ample evidence that Williams, during a period of time that was thirty or more days in duration, committed two or more acts of sexual abuse against Kaylee. *See* Tex. Penal Code Ann. § 21.02(b).

As to the arguments of counsel, during closing argument, the prosecutor explained to the jury that "[t]he 12 of you just have to believe that there were at least two sexual acts . . . that were committed in a duration more than 30 days." The prosecutor then referred the jury to a demonstrative exhibit that provided a timeline of the sexual abuse, noting that certain acts were done to Kaylee when she was in the fourth grade and other acts were done to Kaylee when she was in the fifth grade. Later during closing, the prosecutor referred to the application paragraph, stating,

> Application Paragraph 1 is the continuous violence against a child, and that is what we are asking you to convict the defendant of. And what that means is that you believe [Kaylee], that you believe her when she says that these sexual acts occurred to her over more than a 30-day period. Okay. The charge says if you find the defendant guilty of continuous sexual abuse of a child in Application Paragraph 1, you stop there. You do not have to consider 2, 3, or 4. And I'm going to put that in context—context for you. Two, 3, and 4 means that you believe that one of those things happened, one of those sexual acts. You don't believe that it was over this long period of time that she said. . . .

16

We are not asking you to consider those because we believe that we met Application Paragraph 1 for continuous. Because what finding him guilty of those other things would be is you telling [Kaylee] what happened to her and not listening to her tell you what happened to her. Either you believe her entirely or you don't. That's the State's position. You believe that she was sexually abuse[d] for years or you don't. And if you don't, you find him not guilty.

As to other relevant information from the trial, we note that during voir dire, the prosecutor explained the CSA duration requirement to the jury,

When I talked about my burden of proof, these are the elements that I have to prove beyond a reasonable doubt, each one of these.

So they are the defendant . . . during a period of time that is 30 days or more in duration, commit two acts—two or more acts of sexual abuse against a child under 14 years of age, and the defendant was 17 years of age or older.

. . . .

So going back, just to highlight quickly on continuous sexual abuse. Remember, it is during a period of time that is over 30 days in duration, so outside of one month. If there was 25 acts within the 30 days, that is not continuous sexual assault. The State has to prove that there was two acts outside that 30 days, and it is continuous.

. . . .

All that I have to prove, that there were two acts outside of the 30 days. So you may hear about 20 different acts, or 10 different acts or five. You don't have to agree on which two you think occurred. You just have to agree as a jury that two occurred outside that 30 days.

Based on our review of these factors, we cannot say that the alleged error egregiously harmed Williams. *See Nava*, 415 S.W.3d at 298; *Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 171. We overrule Williams's second issue.

17

### 4. Complaint that the Trial Court Erred by Not Requiring Unanimity in the Charge

In his third issue, Williams argues that the trial court erred by not requiring unanimity in the charge. Specifically, Williams contends that unanimity is required under the CSA statute as to the underlying offenses and that the trial court erred by not including such an instruction in the charge. *See* Tex. Penal Code Ann. § 21.02. We have previously rejected this argument on multiple occasions. *See, e.g.*, *Heide v. State*, No. 02-20-00056-CR, 2021 WL 2460734, at *3 (Tex. App.—Fort Worth June 17, 2021, pet. ref'd) (mem. op., not designated for publication) (holding that the CSA statute does not violate a defendant's right to a unanimous jury verdict); *Salinas v. State*, No. 02-18-00060-CR, 2019 WL 1574953, at *11 (Tex. App.—Fort Worth Apr. 11, 2019, pet. ref'd) (mem. op., not designated for publication) (noting that "this court has already held that the [CSA] statute does not violate a constitutional right to a unanimous jury verdict"); *Waters v. State*, No. 02-17-00368-CR, 2018 WL 6565939, at *1 (Tex. App.—Fort Worth Dec. 13, 2018, pet. ref'd) (mem. op., not designated for publication) (same); *Ingram v. State*, 503 S.W.3d 745, 748 (Tex. App.—Fort Worth 2016, pet. ref'd) ("[W]e and other courts of appeals have held that the specific acts of sexual abuse alleged to have constituted CSA are not separate elements of the offense subject to the unanimity requirement."); *Pollock v. State*, 405 S.W.3d 396, 404–05 (Tex. App.—Fort Worth 2013, no pet.) (holding that the CSA statute did not violate the right to jury unanimity, even though the statute did not require jury unanimity on

18

which specific acts of sexual abuse were committed by a defendant or the exact dates when the acts were committed).

Williams asks us to reconsider our prior holdings in light of the United States Supreme Court's opinion in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020). In *Ramos*, the Court found that the Sixth Amendment right to a jury trial, as incorporated against the states by the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense. *Id.* at 1397. Accordingly, the Court declared unconstitutional certain laws in Louisiana and Oregon that permitted convictions of serious offenses on jury verdicts agreed to by only ten of twelve jurors. *Id.* at 1394, 1397.

Having reviewed *Ramos*, we are unpersuaded by Williams's argument that the holding in *Ramos* somehow invalidates our prior holdings with respect to whether the CSA statute requires unanimity as to the underlying offenses.[10] Our prior holdings did not turn on the same type of Sixth-Amendment issue as *Ramos*; rather, they turned on whether "the specific acts of sexual abuse alleged to have constituted CSA are not

---

[10]We note that in *Allen v. State*, 620 S.W.3d 915, 922 (Tex. Crim. App. 2021), the Texas Court of Criminal Appeals stated that it had initially granted leave to the appellant to file a post-submission ground for review in which the appellant asked whether, in light of *Ramos*, a jury must be unanimous on which particular acts of sexual abuse were committed despite the language of the CSA statute. The court then noted that, upon further consideration, it had concluded that its decision to grant the appellant's motion for leave to file his post-submission ground for review was improvident, and the court dismissed the appellant's post-submission ground for review as improvidently granted. *Id.*

19

separate elements of the offense subject to the unanimity requirement." *Ingram*, 503 S.W.3d at 748. We do not see how *Ramos* changes our precedent that the underlying offenses are not separate elements subject to the unanimity requirement.[11] We thus hold that the trial court did not err in this respect. We overrule Williams's third issue.

## B. Complaints that the Trial Court Abused Its Discretion by Admitting Certain Evidence

### 1. Complaint that the Trial Court Abused Its Discretion by Admitting the Entire SANE Report

In his fourth issue, Williams argues that the trial court abused its discretion by admitting the entire SANE report over his hearsay objection. The State counters that Williams failed to preserve this complaint because Williams's objection at trial lacked the specificity needed to preserve the complaint.

A complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection, or motion" that "stated the grounds for the ruling that

---

[11]Williams also points us to *Richardson v. United States*, where the United States Supreme Court held that to convict a defendant of continuing criminal enterprise, jury unanimity was required not only that the defendant committed some "continuing series of violations" but that jury unanimity was required as to which specific violations made up the "continuing series of violations." 526 U.S. 813, 815, 824, 119 S. Ct. 1707, 1709, 1713 (1999). Williams argues that the combination of *Ramos* and *Richardson* requires unanimity for the underlying offenses of CSA. But we have already rejected the notion that *Richardson* should persuade us to depart from our precedent. *See Salinas*, 2019 WL 1574953, at *11; *Olage v. State*, No. 02-18-00184-CR, 2019 WL 1184575, at *1 (Tex. App.—Fort Worth Mar. 14, 2019, no pet.) (mem. op., not designated for publication); *see also Jacobsen v. State*, 325 S.W.3d 733, 736–39 (Tex. App.—Austin 2010, no pet.) (distinguishing *Richardson*).

the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a). Likewise, under Rule 103 of the Texas Rules of Evidence, error may not be predicated upon a ruling that admits or excludes evidence unless a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. Tex. R. Evid. 103(a)(1). A party's objection "must be specific enough so as to let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009) (internal quotations omitted).

When an exhibit contains both admissible and inadmissible material, the objection to the exhibit must specifically refer to the challenged material to apprise the trial court of the exact objection. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995); *Lumsden v. State*, 564 S.W.3d 858, 898 (Tex. App.—Fort Worth 2018, pet. ref'd). If the party who objects to the exhibit containing both admissible and inadmissible material does not specify which part of the exhibit is not admissible, the asserted error in admitting the material is not preserved for review. *Wintters v. State*, 616 S.W.2d 197, 202 (Tex. Crim. App. [Panel Op.] 1981); *Lumsden*, 564 S.W.3d at 898. The Texas Court of Criminal Appeals has made clear that this approach gives the trial court carte blanche to overrule the objection:

> The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection.

*Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992), *abrogated in part on other grounds by Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001).

Here, when the State offered the SANE report into evidence, Williams's counsel objected on the grounds that "[i]t contains a bunch of hearsay." The trial court then asked Williams's counsel to specify what portions of the report were being objected to, and Williams's counsel responded that he was "objecting to all of these parts going into the record." The trial court then said, "Well, you're going to have to be more specific if . . . some of it is admissible." Williams's counsel then said, "Well, anything that she gave a statement about would be hearsay." Williams continued his objection, stating that it "contains hearsay, and it contains a lot of—a lot of statements that have nothing to do with medical purposes or treatment." The trial court ultimately admitted the SANE report.

Our review of the record reveals that the SANE report that Williams complains of contains at least some evidence that the trial court would not have abused its discretion by admitting—statements that were made for and reasonably pertinent to medical diagnosis or treatment. *See* Tex. R. Evid. 803(4). Thus, to preserve error, Williams was required to identify for the trial court the portions of the SANE report

that he considered inadmissible. *See Sonnier*, 913 S.W.2d at 518; *Jones*, 843 S.W.2d at 492; *Lumsden*, 564 S.W.3d at 898. Williams failed to do so.[12] His global hearsay objection to the report, without specifying the statements that he found to be objectionable, failed to preserve error in the trial court's admission of the report. *See Sonnier*, 913 S.W.2d at 518; *Jones*, 843 S.W.2d at 492; *Lumsden*, 564 S.W.3d at 898. We overrule Williams's fourth issue.

## 2. Complaint that the Trial Court Abused Its Discretion by Admitting an Extraneous-Offense Allegation

In his fifth issue, Williams argues that the trial court abused its discretion by admitting an extraneous-offense allegation that Williams had also sexually abused Aubrey, Kaylee's cousin.

Generally, extraneous-offense evidence is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with his own bad character. Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). But extraneous-offense evidence may be admissible when it has relevance apart from character conformity, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

---

[12]In his appellate brief, Williams now provides specific statements contained in the SANE report that he claims are inadmissible hearsay. But Williams's specific objections now made on appeal do not comport with his global hearsay objection made at trial, and we will not consider them. *See Nelson v. State*, 607 S.W.2d 554, 555 (Tex. Crim. App. [Panel Op.] 1980); *Anderson v. State*, No. 02-18-00198-CR, 2019 WL 2429405, at *10 (Tex. App.—Fort Worth June 6, 2019, no pet.) (mem. op., not designated for publication).

23

Tex. R. Evid. 404(b)(2); *Devoe*, 354 S.W.3d at 469. Extraneous-offense evidence may also be admissible to rebut a defensive theory if a party "opens the door" to the evidence by leaving a false impression with the jury in a manner inviting the opposing party to respond. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009).

A trial court's ruling on the admissibility of extraneous-offense evidence is reviewed for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and the ruling will be upheld. *Id.* at 343–44. A trial court's ruling admitting extraneous-offense evidence is generally within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, nonpropensity issue, and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading of the jury. *Devoe*, 354 S.W.3d at 469; *De La Paz*, 279 S.W.3d at 344.

Here, during the State's examination of Kaylee, Kaylee testified that she had met with CPS to discuss the abuse. She also testified that she had not told her parents about the abuse because she did not think they would believe her. On cross-examination, the following exchange occurred between Kaylee and Williams's counsel:

Q. And I think the State asked you, did you ever talk to somebody from CPS?

A. Yes.

24

Q. Okay. How many times?

A. The first time somebody had said that he was doing it, and I denied it because I was scared, and I had to go see them twice, and this time that—that it happened, I had to go see them, I think twice, too.

Q. Okay. Let me ask you a little bit about that, then. Because you had said, when the State asked a question, why—why didn't you say anything to anyone, and I think your answer was you were afraid they wouldn't believe you?

A. Yes.

Q. Okay. But is it fair to say somebody did believe it because they asked you about it, right?

A. Yes.

Q. Okay. So there was somebody that was from—that you spoke to from CPS that was asking you about if something happened and you knew what they were talking about, right?

A. Yes.

Q. But you said it didn't happen?

A. Yes.

Q. Okay. In fact, I think you spoke to—was it three different ladies about this?

A. I'm not sure.

Q. It was—it was—well, I'm sorry, I might be confusing you. I think one of the ladies you spoke to twice, right?

A. Yes.

. . . .

25

Q. So when they asked you about some of these things, and this was— the interview that you said didn't happen, that happened first, correct?

A. Yes. Yes.

Q. Okay. And then it was about, oh, about a year or so later, that's when this part about your friend talking to the counselor and saying—saying things had happened, right?

A. Yes.

Prior to redirect, counsel for both sides approached the bench, and the prosecutor informed the trial court that the State intended to elicit from Kaylee why she had been interviewed by CPS on multiple occasions, testimony that would implicate the fact that one of the CPS interviews involved allegations of abuse by Williams against both Kaylee and Aubrey. The State maintained that Williams's counsel had "opened the door" to such questioning by asking Kaylee on cross-examination how many times she had met with CPS. Williams's counsel objected to the introduction of such evidence, but the trial court said it was going to allow the evidence. During redirect, the following exchange occurred:

Q. So the first time that you talked to CPS . . . does it sound right that that was in 2016?

A. Yes.

Q. And the time that you went to go talk to the CPS worker, had you made any allegation that [Williams] had done anything to you?

A. No.

Q. Why were you talking to CPS?

26

A. Because my cousin had brought it up with her—I think—I think it was at school, and—and she was talking about me while talking about [Williams], and it came over to me, and my—the counselor had to call me down, and I think somebody had talked to me about—I was in the office about it.

Q. So when you say that your cousin had brought—brought it up, what's your cousin's name?

A. [Aubrey].

Q. And [Aubrey] had brought what up?

A. [Williams] touching us.

Q. [Williams] touching you and her?

A. Yes.

Q. And you had to go talk to somebody from CPS about him touching [Aubrey] and touching you?

A. Yes.

Williams argues that the trial court abused its discretion by admitting the evidence relating to the alleged abuse of Aubrey because such evidence was immaterial and only served to prejudice the jury. Assuming that Williams properly preserved this complaint, we agree. The evidence relating to the alleged abuse of Aubrey was immaterial to the abuse of Kaylee that was at issue here, and such evidence lacked relevance apart from character conformity. And we disagree with the State's argument that Williams "opened the door" to the admission of such evidence

27

simply by asking Kaylee how many times she had spoken with CPS. *See Hayden*, 296 S.W.3d at 554.

Error in the admission of extraneous-offense evidence is nonconstitutional error. *Hernandez v. State*, 176 S.W.3d 821, 824–25 (Tex. Crim. App. 2005); *Jackson v. State*, No. 02-11-00414-CR, 2012 WL 6049074, at *5 (Tex. App.—Fort Worth Dec. 6, 2012, pet. ref'd) (mem. op., not designated for publication). Because the error is not constitutional, we apply Rule 44.2(b). Tex. R. App. P. 44.2(b). That Rule requires us to disregard any nonconstitutional error that does not affect an appellant's substantial rights. *Id.* An error that has a "substantial and injurious effect or influence in determining the jury's verdict" affects a substantial right. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In determining the likelihood that a nonconstitutional error adversely affected the jury's decision, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the

State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56.

We have reviewed the record as a whole and have found that the extraneous-offense allegation played a very small role in the trial. While Kaylee testified that Aubrey had mentioned to CPS that Williams was abusing them both, Kaylee also testified that she denied the allegation to CPS. And Aubrey—who testified at trial—did not testify that Williams had abused her. In addition, neither party mentioned the alleged abuse of Aubrey during closing argument.[13] We also note that there was ample evidence to support Williams's conviction—namely, Kaylee's testimony that Williams had entered her room at night and sexually abused her "over 200 times"—approximately once or twice a week—over a two-year period when she was in the fourth and fifth grades.

We conclude that, in the context of the entire case against Williams, the trial court's error in admitting the extraneous-offense allegation did not have a substantial or injurious effect on the jury's verdict and did not affect Williams's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we must disregard the error. *See* Tex. R. App. P. 44.2(b).

---

[13]While Aubrey was mentioned on a few occasions during closing argument, she was mentioned in the context of her testimony that she had seen Williams put his hand under Kaylee's skirt when the three of them were playing a game.

We overrule Williams's fifth issue.

## IV. CONCLUSION

Having overruled Williams's five issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 10, 2021