

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00021-CR

———————————————————

RAYMOND LUMSDEN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F15-1103-211

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Appellant Raymond Lumsden appeals the trial court's order denying his fifth motion for postconviction forensic DNA testing. *See* Tex. Code Crim. Proc. Ann. art. 64.01(a-1). Because the trial court correctly determined that Lumsden did not meet his burden of proof to obtain such relief, we will affirm the trial court's order. *See id.* art. 64.03(a).

## I. Factual Background and Procedural History

In 2016, a jury found Lumsden guilty of aggravated sexual assault of a child, indecency with a child, and criminal solicitation of a minor and assessed his punishment at life confinement for each offense, and the trial court sentenced him to three consecutive life sentences. In earlier opinions, this court has thoroughly set forth the underlying facts, which we need not rehash, but for context we provide the following factual summary:

> Allison,[1] Lumsden's then-girlfriend's elementary-aged daughter, accused Lumsden of sexually assaulting her. She testified that after her mother started dating Lumsden, they moved in with him and that she had her own room at Lumsden's house. Allison accused Lumsden of sexually assaulting her one night while her mother was upstairs sleeping. She told her mother about the assault the next morning and recounted the allegations to a [Sexual Assault Nurse Examiner (SANE)] and a forensic interviewer.

---

[1]We use the same pseudonym as in our prior opinions to refer to the complainant. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

*Lumsden v. State* (*Lumsden III*), No. 02-23-00195-CR, 2024 WL 853354, at *1 (Tex. App.—Fort Worth Feb. 29, 2024, pet. ref'd) (mem. op., not designated for publication). We affirmed Lumsden's convictions and sentences on direct appeal. *See Lumsden v. State* (*Lumsden I*), 564 S.W.3d 858 (Tex. App.—Fort Worth 2018, pet ref'd).

Following his direct appeal's conclusion, Lumsden has filed a series of unsuccessful DNA-testing motions, Article 11.07 writs, and other postconviction challenges. He filed an initial motion for postconviction forensic DNA testing, which the trial court denied in April 2019. *See Lumsden v. State* (*Lumsden II*), No. 02-21-00012-CR, 2021 WL 4319602, at *5 (Tex. App.—Fort Worth Sept. 23, 2021, no pet.) (mem. op., not designated for publication). Next, Lumsden filed two more DNA-testing motions, both of which the trial court denied and this court affirmed. *Id.* at *13. Lumsden later filed a fourth DNA-testing motion, which the trial court denied and this court affirmed. *See Lumsden III*, 2024 WL 853354, at *6–7.[2] In both of this court's

[2]Lumsden has also filed two original applications for a writ of mandamus and four Article 11.07 writs with the Texas Court of Criminal Appeals, all of which the court has denied or dismissed without written orders. *See* https://search. txcourts.gov/Case.aspx?cn=WR-89,651-01&coa=coscca, https://search.txcourts.gov /Case.aspx?cn=WR-89,651-02&coa=coscca, https://search.txcourts.gov/Case.aspx? cn=WR-89,651-03&coa=coscca, https://search.txcourts.gov/Case.aspx?cn=WR-89,651-04&coa=coscca, https://search.txcourts.gov/Case.aspx?cn=WR-89,651-05& coa=coscca, and https://search.txcourts.gov/Case.aspx?cn=WR-89,651-06&coa =coscca (last visited July 16, 2025); *see also Lumsden v. Dir., TDCJ-CID*, No. 4:20CV713, 2024 WL 4440983, at *46 (E.D. Tex. May 11, 2024) (recommending denial and dismissal with prejudice of Lumsden's federal habeas petition), *report and recommendation adopted*, No. 4:20-CV-713-SDJ, 2024 WL 4437636 (E.D. Tex. Oct. 7, 2024).

opinions concerning Lumsden's DNA-testing motions, we have held that the record contains other substantial evidence of his guilt. *Id.* at *6 (citing *Lumsden II*, 2021 WL 4319602, at *11).

Undeterred, Lumsden filed a fifth DNA-testing motion in early December 2024, seeking to test Allison's underwear and unspecified "other evidence" with a "newer technique . . . such as Qiagen Investigator 24 Plex." Lumsden offered no evidence in support of his motion other than his unsworn declaration parroting Article 64.03's requirements. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a).

Upon reviewing Lumsden's latest DNA-testing motion, the trial court denied it and signed an order with findings of fact and conclusions of law. After setting forth the procedural history and facts of the case, the denial order stated the following factual findings:

**Lumsden's Claims and the Corresponding Facts**

8. Lumsden requests the testing or re-testing of all of the State's evidence.

9. Most of Lumsden's claims have already been litigated and denied.

10. Allison consistently identified Lumsden as the perpetrator[,] and the evidence corroborated her identifications of Lumsden.

11. The Second Court of Appeals found that the record contained substantial evidence of guilt outside of the DNA test results.

12. Lumsden only provides conclusionary statements about newer DNA testing technology and problems with expert testimony in this case.

4

## Evidence Still in Existence

13. Allison's underwear and the SANE kit are in the possession of the Denton County District Clerk's Office, as detailed in the State's response to Lumsden's first Chapter 64 motion for DNA testing.

The trial court then made the following conclusions of law:

1. Lumsden bears the burden of satisfying all the requirements of Chapter 64 of the Texas Code of Criminal Procedure. *See State v. Swearingen*, 478 S.W.3d 716, 728–31 (Tex. Crim. App. 2015); *Leal v. State*, 303 S.W.3d 292, 295 (Tex. Crim. App. 2009); *Wilson v. State*, 185 S.W.3d 481, 484 (Tex. Crim. App. 2006).

2. Identity was not and is not an issue in this case because Allison consistently identified Lumsden as the perpetrator, there was substantial evidence of Lumsden's guilt, and additional DNA testing of evidence would not determine the identity of who committed the offense and could not exculpate Lumsden. *See* Tex. Code Crim. Proc. [Ann.] art. 64.03(a)(1)(C); *Leal*, 303 S.W.3d at 296; *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008).

3. With Allison's repeated identification of Lumsden and the substantial evidence of Lumsden's guilt, even outside the DNA evidence, any finding of a third DNA profile would not affirmatively cast doubt upon the validity of Lumsden's conviction and would "'simply muddy the waters.'" *See Ex parte Gutierrez*, 337 S.W.3d 883, 892 (Tex. Crim. App. 2011) (quoting *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002)).

4. Lumsden has not demonstrated by a preponderance of the evidence that, even if exculpatory results were obtained, there exists a greater than 50% likelihood that he would not have been convicted. *See* Tex. Code Crim. Proc. [Ann.] art. 64.03(a)(2)(A); *see also* [*Lumsden III*, 2024 WL 853354, at *6; *Lumsden II*, 2021 WL 4319602, at *11].

5. Lumsden has not shown that newer testing techniques would provide results that are more accurate and probative than the results of the previous test. *See Wilson*, 185 S.W.3d at 484; Tex. Code Crim. Proc. [Ann.] art. 64.01(b)(2)(A).

**6.** Lumsden has not carried his burden of satisfying all the requirements of Chapter 64 of the Texas Code of Criminal Procedure. *See Swearingen*, 478 S.W.3d at 728–31; *Leal*, 303 S.W.3d at 295; *Wilson*, 185 S.W.3d at 484.

## II. Legal Principles Concerning Postconviction Forensic DNA Testing

As this court set forth in *Lumsden III*,

Under Chapter 64, a convicted person may file "a motion for forensic DNA testing of evidence . . . containing biological material." Tex. Code Crim. Proc. Ann. art. 64.01(a-1). Such a motion requests testing of evidence that was in the State's possession during trial and that either was not previously tested or, although previously tested, can be tested with newer techniques that would provide more "accurate and probative" results. *Id.* art. 64.01(b)(2)(A); *see Holberg v. State*, 425 S.W.3d 282, 284 (Tex. Crim. App. 2014). A convicting court may order testing only if (1) the evidence "still exists and is in a condition making DNA testing possible"; (2) the evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect"; and (3) "identity was or is an issue in the case." Tex. Code Crim. Proc. Ann. art. 64.03(a)(1); *Holberg*, 425 S.W.3d at 284. Additionally, to prevail on a Chapter 64 motion, a convicted person must prove by a preponderance of the evidence that he "would not have been convicted if exculpatory results had been obtained through DNA testing" and that "the request for the proposed DNA testing is not made to unreasonably delay the execution of [the convicted person's] sentence." Tex. Code Crim. Proc. Ann. art. 64.03(a)(2); *Holberg*, 425 S.W.3d at 284.

2024 WL 853354, at *4.

## III. Standard of Review

We review a trial court's ruling on a DNA-testing motion under a bifurcated standard. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017); *Rivera*, 89 S.W.3d at 59. Under this standard, "we give almost total deference to the judge's resolution of historical fact issues supported by the record and application[]-of-law-to-fact issues

6

turning on witness credibility and demeanor," but "we review de novo all other application-of-law-to-fact questions." *Reed*, 541 S.W.3d at 768–69. If the trial court's decision is correct under any theory of applicable law, we will sustain it. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000); *Evans v. State*, 628 S.W.3d 358, 362–63 (Tex. App.—Fort Worth 2021, no pet.).

## IV. Analysis

In two points, Lumsden argues that the trial court erred by (1) determining that he had failed to meet his burden for postconviction DNA testing and (2) ruling in contravention of legal precedent. We disagree.

### A. Lumsden did not meet his burden.

#### 1. The other evidence of Lumsden's guilt was substantial.

Generally, a movant does not satisfy his burden under Article 64.03 if "the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing." *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010); *see also Dunning v. State*, 572 S.W.3d 685, 698 (Tex. Crim. App. 2019) ("When the true exculpatory value of the test results are weighed against all of the inculpatory evidence, we conclude that Appellant has not shown that, had the results been available during the trial of the offense, it is reasonably probable that he would not have been convicted."). In both of our prior opinions, we affirmed the denial of Lumsden's second, third, and fourth DNA-testing motions in part because of the

other substantial evidence of Lumsden's guilt. *See Lumsden III*, 2024 WL 853354, at \*6; *Lumsden II*, 2021 WL 4319602, at \*11.

We detail again—now for the fourth time—the record evidence of Lumsden's guilt:

- Allison told her mother, [the SANE], and the forensic examiner that Lumsden had touched her privates; Allison did not mention being touched on her privates by any other male.

- During Allison's physical exam, [the SANE] noted "generalized redness" that covered Allison's vaginal area.

- [The SANE] testified that the redness on Allison's vagina was consistent with Allison's statement that Lumsden had put his finger there.

- Lumsden was the only male in his lineage who was present at the house on the night in question; his son was not home.

- And Lumsden could not be excluded as a contributor to the male DNA that was found on the vaginal swab.

*Lumsden III*, 2024 WL 853354, at \*6 (quoting *Lumsden II*, 2021 WL 4319602, at \*11); *see Lumsden I*, 564 S.W.3d at 866–74. Even if we assumed that Lumsden's DNA testing would show results favorable to him, he could not show that such results would exculpate him in light of the other substantial evidence of his guilt. *See Swearingen*, 303 S.W.3d at 736.

### 2. Identity was not and is not at issue.

Lumsden asserts that because Allison—who was eight years old during trial, *see Lumsden I*, 564 S.W.3d at 866—could not identify Lumsden in the courtroom at trial, identity was at issue. But in making this assertion, Lumsden ignores (1) the substantial

8

identity evidence cited above, in which Allison identified Lumsden as her abuser to numerous people before trial; (2) the unobjected-to trial testimony from an investigator agreeing with the prosecutor's question on whether it "would be common for a child to be fearful to look . . . her [abuser] in the face in open court and point [him] out," *see id.* at 892–93; and (3) the trial testimony from Allison's half-brother identifying Lumsden in the courtroom, *see id.* at 868.

"The identity requirement in Chapter 64 relates to the issue of identity as it pertains to the DNA evidence." *Leal*, 303 S.W.3d at 296 (quoting *Prible*, 245 S.W.3d at 470). A convicted person cannot meet the identity requirement unless the DNA testing determines the identity of the perpetrator or exculpates the accused. *See Prible*, 245 S.W.3d at 470.

Here, despite any issues with Allison's in-court identification of Lumsden, additional testing of Allison's underwear or vaginal swab would neither determine the identity of who committed the crimes at issue nor exculpate Lumsden because his DNA was found on the vaginal swab. *See Lumsden I*, 564 S.W.3d at 872–73 (quoting DNA analyst's testimony that "at all nine locations where we obtained data for the vaginal swab, there was an exact match with the alleles detected in Raymond Lumsden's profile"); *see also Leal*, 303 S.W.3d at 296; *Prible*, 245 S.W.3d at 469–70; *Wilson*, 185 S.W.3d at 485 (stating that "if . . . DNA testing showed that another perpetrator was involved, that finding would not exonerate appellant because it would show nothing more than there was another party to the crime, at best"). The trial

court thus correctly concluded that identity was not at issue and that additional DNA testing would "simply muddy the waters." *See Rivera*, 89 S.W.3d at 59.

### 3. Lumsden rehashes already-rejected arguments about alleged newer technology and allegedly false testimony.

The trial court found that Lumsden had presented only conclusory statements about newer DNA-testing technology and the alleged problems with the expert testimony at trial, and Lumsden's bare assertions were insufficient. As the Austin Court of Appeals has noted,

> For retesting, "the convicted person must show that although previously subjected to DNA testing, the evidence can be subjected to testing with newer techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *See Padilla v. State*, Nos. 03-12-00299[-CR, 03-12-00300-CR, 03-12-]00301-CR, 2013 WL 3185896, at \*5 (Tex. App.—Austin June 20, 2013, pet. ref'd) (mem. op., not designated for publication). "To meet this burden, the convicted person must provide statements of fact in support of his claims; general, conclusory statements are insufficient." *Id.*

*Lumsden II*, 2021 WL 4319602, at \*7 (quoting *In re Keller*, No. 03-18-00420-CR, 2019 WL 1561817, at \*5 (Tex. App.—Austin Apr. 11, 2019, pet. ref'd) (mem. op., not designated for publication)).

Although Lumsden's DNA-testing motion discussed the Qiagen Investigator 24 Plex, he offered no competent evidence supporting his assertions about the proposed testing. Rather, his unsworn declaration summarily stated, "[T]he evidence was not previously tested, or newer DNA testing techniques exist for more probative results." Such bald conclusions are insufficient. The trial court thus correctly

concluded that Lumsden had failed to meet Article 64.03(a)'s requirements for testing or retesting any evidence with the techniques he proposed.[3] *See id.* at *9 (first citing Tex. Code Crim. Proc. Ann. art. 64.01(a-1), (b)(2)(A); then citing *Nall v. State*, No. 02-19-00008-CR, 2019 WL 2635571, at *4 (Tex. App.—Fort Worth June 27, 2019, pet. ref'd) (per curiam) (mem. op., not designated for publication); then citing *Trevino v. State*, No. 04-18-00412-CR, 2019 WL 1370158, at *3 (Tex. App.—San Antonio Mar. 27, 2019, pet. ref'd) (mem. op., not designated for publication); and then citing *Marks v. State*, No. 2-09-144-CR, 2010 WL 598459, at *1 (Tex. App.—Fort Worth Feb. 18, 2010, no pet.) (mem. op., not designated for publication)).

Under Article 64.03(a), Lumsden had to meet several requirements. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a); *Calton v. State*, No. 02-17-00364-CR,

---

[3]We also disagree with Lumsden's conclusory assertion that he established that the State had presented false or inaccurate testimony through its DNA analyst Christina Capt. Lumsden questions Capt's testimony based solely on the court of criminal appeals's decision in *Ex parte Thomas*, No. WR-94,420-01, 2023 WL 7382706 (Tex. Crim. App. Nov. 8, 2023) (not designated for publication). In *Thomas*, the court stated that Thomas had shown through newer DNA testing techniques that—unlike the testing available at trial—he would have been excluded as a contributor to the DNA sample. *Id.* at *1. The court stated that Capt's "testimony [in *Thomas*'s trial] was not erroneous under the standards used at the time of trial," but Capt's testimony gave the jury a false impression and likely affected Thomas's conviction and sentence. *Id.* Both the trial court and the State agreed with Thomas and urged the court to grant Thomas relief, which it did. *Id.* at *1–2. Such is not the case here where Lumsden has offered no proof about any newer testing technique and has failed to present any evidence that Capt's testimony about Lumsden's DNA was inaccurate or false. In addition, neither the State nor the trial court supports any ground in Lumsden's fifth DNA-testing motion. Accordingly, *Thomas* is wholly distinguishable. *See id.*

2018 WL 5289365, at *3 (Tex. App.—Fort Worth Oct. 25, 2018, pet. ref'd) (mem. op., not designated for publication). We discussed above how Lumsden has failed to meet many of those requirements, but missing just one—as he did—was fatal to Lumsden's motion. *See Calton*, 2018 WL 5289365, at *3. Because Lumsden failed to show that the trial court erred by denying his fifth DNA-testing motion, we overrule his first point.

**B.     The trial court's ruling does not conflict with any court of criminal appeals' precedent.**

In his second point, Lumsden argues that "the [trial] court's denial of DNA testing is conflicting with the precedent of the Court of Criminal Appeals of Texas." Above, we quoted verbatim the trial court's conclusions of law—including its legal citations—to show that the trial court cited binding authority from the court of criminal appeals. And as we have discussed in relation to Lumsden's first point, the trial court applied the law to Lumsden's motion and correctly determined that he had not carried his burden of satisfying all of Article 64.03(a)'s requirements. *See Swearingen*, 478 S.W.3d at 728-31; *Leal*, 303 S.W.3d at 295; *Wilson*, 185 S.W.3d at 484.

Lumsden cites three cases to argue that the trial court's ruling ignores or conflicts with the court of criminal appeals' holdings: *Esparza v. State*, 282 S.W.3d 913 (Tex. Crim. App. 2009); *Blacklock v. State*, 235 S.W.3d 231 (Tex. Crim. App. 2007); and *Smith v. State*, 165 S.W.3d 361 (Tex. Crim. App. 2005). *Esparza* involved an appellant who had established that DNA testing would potentially exculpate him and

12

establish his innocence. 282 S.W.3d at 922. In *Blacklock*, the DNA results available at trial were inconclusive on the issue of identity, but through a DNA-testing motion, the appellant proved that newer testing could potentially exclude him as the DNA's donor. 235 S.W.3d at 232–33. Similarly, in *Smith*, the court of criminal appeals held that an appellant was entitled to DNA testing based on evidence that testing a previously untested DNA sample would exculpate him if his DNA did not match the sample's. 165 S.W.3d at 365.

Here, unlike *Blacklock*, *Esparza*, and *Smith*, the original DNA testing confirmed that Lumsden's DNA was on Allison's vagina. *See Lumsden I*, 564 S.W.3d at 872–73. Just as in his previous motions, Lumsden has tried to cast doubt on the initial testing results by hypothesizing about alleged multitudinous secondary DNA transfers and the possibility of the presence of a third party's DNA. *See Lumsden III*, 2024 WL 853354, at *6. But as we have previously explained, "even if we were to accept Lumsden's premise that the presence of third-party DNA would prove that secondary or tertiary DNA transfers are possible, the requested testing could not rule out the possibility that Lumsden's DNA was found on Allison's vagina because he sexually assaulted her." *See id.* at *5.

This is not a case in which the presence of DNA from a third party would be "so strongly exonerating"—that is, "clear that the biological material in question was left by a lone assailant"—to enable Lumsden to meet his burden "despite the existence of other substantial inculpatory evidence." *See Hall v. State*, 569 S.W.3d 646,

656–57 (Tex. Crim. App. 2019) (citing *Esparza*, 282 S.W.3d at 922). Accordingly, the trial court's ruling did not ignore or otherwise conflict with *Blacklock*, *Esparza*, or *Smith*. *See id.* at 656 ("[E]ven when the presence of a third party's DNA may tend to be exonerating, the convicted person's burden will not be satisfied 'if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing.'" (quoting *Swearingen*, 303 S.W.3d at 736)); *Prible*, 245 S.W.3d at 470.

Because the trial court's order follows binding precedent from this court and the court of criminal appeals, we overrule Lumsden's second point.

## V. Conclusion

Having overruled Lumsden's two points, we affirm the trial court's order denying Lumsden's fifth motion for DNA testing.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 17, 2025

14